## McCONNELL v. HOLDERMAN.

No. 164.   Opinion Filed July 13, 1909.

(103 Pac. 593.)

1.   **PRINCIPAL AND AGENT—Contracts of Agent—Liability of Agent.** Although an agent enters into a contract with the actual intention of binding his principal only, if his wording of the same or the circumstances of the case are such as to bind himself, he will be personally liable thereon, notwithstanding the fact that he may have incidentally disclosed the name of his principal.

2.   **APPEAL AND ERROR—Harmless Error—Erroneous Instructions.** Where, at the conclusion of the evidence, counsel for plaintiff moves for an instructed verdict, which the court should give, but which it refuses, and the jury under general and special instructions, given by the court, returns a verdict for plaintiff, on which judgment is entered, the same will not be reversed by this court

Vol. 24—9

on account of errors alleged to have occurred in the instructions given.

(Syllabus by the Court.)

*Error from District Court. Washington County; T. L. Brown, Judge.*

Action by Curtis E. Holderman against P. D. McConnell. Judgment for plaintiff, and defendant brings error. Affirmed.

*Veasey & Rowland,* for plaintiff in error, citing: Mechem on Agency, §§ 556, 558.

*W. H. Kornegay,* for defendant in error, citing: Reinhard on Agency, §§ 303, 304, 305; Mechem on Agency, §§ 557, 558; Thompson on Trial, §§ 2401-2406. .

DUNN, J. On December 27, 1907, defendant in error, plaintiff in the lower court, commenced an action in the district court of Washington county, Okla., in which he sued plaintiff in error to recover a judgment for the value of services alleged to have been rendered him in securing certain leases on lands in the Indian Territory for oil and gas purposes. The defendant, McConnell, filed answer to this petition, in which he admitted that he had been and was engaged in the business of an oil and gas operator, but denied that he had engaged the services of plaintiff to procure for him leases on lands in the Indian Territory, as averred in the petition, and denied that plaintiff procured for him any of the leases mentioned in the petition, or that there was any contractual relationship whatsoever between them regarding such leases. The issues thus made came on for trial before a jury. Each party offered evidence to sustain his claim, and on its conclusion the court instructed the jury and a verdict was returned in favor of plaintiff, upon which judgment was entered, from which defendant has brought this case to this court for review by petition in error and case-made.

The pleadings and evidence raise but one issue, which is: Was there a contract made between plaintiff and defendant whereby and wherein defendant engaged plaintiff to procure for

him the leases referred to? It is the contention of defendant that he was an agent of certain oil companies, and that, acting as the agent of these companies he employed plaintiff to represent these companies in procuring the leases mentioned and that he did not employ the plaintiff to represent him (the defendant). No exceptions or objections are taken or reversed upon the admission or rejection of the evidence; but it is insisted that the court erred in giving two instructions which were duly excepted to and in refusing to give one instruction tendered by counsel for defendant. The sole question in the case, as we have observed, was whether or not plaintiff was employed by defendant, or was employed by the oil companies for which the leases were made. The evidence on this proposition to our minds is without conflict on the part of either plaintiff or defendant. The plaintiff testified as follows:

"A. One night just before these leases were taken, I was called up at home on the phone, and I went to the telephone, and it was long distance, and he said it was P. D. McConnell, and I said, 'What do you want?' He told me that there had been a well come in down at Oolagah, and he wanted me to put my men out in the field at Oolagah and pick up a bunch of leases, and he was to pay me $3 an acre, bonus, including the bonus an Indian should be paid and the commission I should pay to the parties, and I asked over the telephone what sections, townships, and ranges he wanted leases in, and he said, * * * and I followed his directions in the matter, and a day or two after that he came into the office and wanted to know if I had secured any leases, and I told him, 'No,' and he said, 'Get busy, there's a cracker-jack well in there and we are going to lose out if we don't get some of that stuff,' and I told him I had been looking over the allottees in the Indian office there and making some preparations to get some leases, so he told me to get in there and get all I could. He first told me to write them to the Planters' Oil Company, and he said, 'I will get you another company in a day or two to write the leases to,' so two or three days after that he said he guessed he had enough in the Planters' Oil Company, and said to write them from that on to the Polo Oil Company. Q. Did you know any thing about the Polo Oil Company? A. No, sir; I supposed it was him. Q. What did you do then? A. I went ahead and secured these leases under his direction."

The defendant was interrogated on the same proposition, and his evidence on it is as follows:

"A. Along in March, 1907, I telephoned Holderman to take some leases in the Oolagah district, and a few days later went down to his office and confirmed that personally, stating that I wanted about 500 or 600 acres up in that district. Q. Was a price agreed upon for these leases? A. The price was to be $3 an acre, and he was to pay all the expenses. * * * Q. Just state the conversation and arrangements you had with him relative to taking these leases at the time of this trip. A. I told him to take the leases in the name of Planters' Oil & Gas Company, and a few days later I told him to change the name to Polo Oil Company. He took several leases for the Planters' and the balance for the Polo Oil & Gas Company. * * * Q. What arrangements were made between you and Mr. Holderman as to the manner of paying for such leases as were taken by the Polo Oil Company? A. I told Holderman to forward the leases to me at Bartlesville along with the draft and voucher accompanying same, and if they all checked up we would pay for it in that manner. Q. Did you pay these drafts accompanying those leases when they reached Bartlesvile? A. I paid the ones as treasurer for the Planters' Oil & Gas Company. I paid the ones for P. D. McConnell with a P. D. McConnell check, and the ones by the Polo Oil & Gas Company I made a draft on that company through the American National Bank and forwarded them to Tulsa."

The business was conducted in accordance with the arrangement between the parties above set out. The charges for all service rendered by Holderman were made on his books against McConnell, and not against any of the companies. The defendant, to break the force of the foregoing contract, which clearly appears to us to have been an agreement on the part of the defendant to employ the plaintiff personally, and not as an agent, presented in evidence a showing that after all of the work was done the plaintiff had sent to him bills for the leases to the oil companies charged in the names of the company to whom made, and that furthermore he thereafter wrote a letter to the defendant in which he urged defendant to have the parties to whom the leases were made pay for the same; and, furthermore, it is insisted that the

fact that the leases were not taken in the name of defendant, but were taken in the names of the different oil companies, was evidence that the plaintiff understood and knew that he was not working for the defendant, but was hired by and was working for these oil companies. We are not able to agree with counsel in this claim. The evidence which we have set forth above, which shows the contract and the terms of it, is in no wise affected or modified by any of the facts insisted upon by counsel for defendant. There was nothing inconsistent therewith in the plaintiff sending defendant his bill charging in separate items the leases taken showing the different companies in which they were written. Plaintiff did not know any of these companies, and, so far as this record is concerned, none of these companies knew plaintiff. Plaintiff's bookkeeper gave the following undenied testimony:

"Q. On your books you charge the Planters' Oil leases to Mr. McConnell, and also the Polo? A. Just opened up all together and the account all went together. We didn't know Polo, Planter, or anybody else. We had business with Mr. McConnell. Q. Did you have an account in your office against McConnell and Slemaker? A. No. sir. Q. Did you charge any of the leases against McConnell and Slemaker? A. No, sir."

If Mr. McConnell was the agent for these companies charged with the duty of procuring these leases for them and authorized to employ subagents for this purpose, it does not appear in this record. To our minds, taking the language of the parties as they each detail the terms of the contract, there is no difference between them. If Mr. McConnell was acting merely as an agent for these companies, and intended to bind them and the plaintiff into contractual relations, the duty rested upon him, as is said by Mr. Mechem on Agency (section 554):

"If he would avoid personal liability to disclose his agency, and not upon others to discover it, it is not therefore enough that the other party has the means of ascertaining the name of the principal; he must have actual knowledge, or the agent will be bound. There is no hardship to the agent in this rule, as he always had it in his power to relieve himself from personal liability by fully disclosing his principal and contracting only in the lat-

ter's name. If he does not do this, it may well be presumed that he intended to make himself personally responsible. The subsequent disclosure of the principal by the agent is not sufficient, nor is the commencement of an action against the principal conclusive evidence of an intention to hold him alone. Nothing short of satisfaction from the principal would in such a case be conclusive evidence of a discharge of the agent."

The principle of law peculiarly applicable to the situation in the case at bar, viewing the same from the standpoint of defendant, is set out by Clark & Skyles in their recent work on the Law of Agency, at section 556, where it is laid down, with numerous authorities to sustain it, that:

"An agent may even become liable on a contract, contrary to his actual intention. As has been seen, the intention of the parties is to be determined from the terms of the contract and the surrounding circumstances, and, if the contract shows a clear intention to bind the agent, he will be bound thereby, notwithstanding his actual intention may be otherwise. Hence, although an agent enters into a contract with the actual intention of binding his principal only, if his wording of the contract or the other circumstances of the case are such that he binds himself, he will be personally liable thereon, notwithstanding he has disclosed his principal."

Plaintiff followed defendant's instruction implicitly in sending the charges made for the leases upon the vouchers furnished by defendant, charging him for the services rendered. Defendant paid plaintiff for all that were received by the companies he served. The fact that defendant drew on these companies for money to meet plaintiff's charges was of no consequence to plaintiff, even had he known it. Under the foregoing rules, and the undisputed facts of the case, in our judgment the instruction requested by counsel at the conclusion of the entire evidence, asking that the court direct a verdict for plaintiff, should have been sustained. Therefore instructions requested by defendant and refused, or instructions given by the court and excepted to, although error was committed, would not be prejudicial or require a reversal of the cause. If they swayed the jury, it would simply

result in a right conclusion for a wrong reason, and no injury would follow. Thompson on Trial, § 2401; Brickwood, Sackett, Instructions to Juries, § 190; *National Solar Salt Works v. Wemyss,* 38 Kan. 482, 17 Pac. 90; *Hazen & Lundy v. Pierson & Co.,* 83 Ill. 241; *Burling v. Illinois Central Ry. Co.,* 85 Ill. 18; *Phillips v. Ocmulgee Mills,* 55 Ga. 633.

The verdict was for the plaintiff. In our judgment it could not have been otherwise, even in the absence of the instructions objected to, or with those requested given, and hence, upon the authorities which we have cited above, no error grew out of the instructions.

Finding therefore that the verdict was not only justified by the facts proven, but was in fact the only proper conclusion to which the jury would have been justified in coming, we therefore affirm the judgment rendered upon the same.

Hayes, Turner, and Williams, JJ., concur; Kane, C. J., absent and not sitting.