## GAMBLE v. RILEY *et al.*

No. 2825.   Opinion Filed September 23, 1913.

(135 Pac. 390.)

1.  **BILLS AND NOTES**—Conditional Delivery.  ·A promissory note may be delivered conditionally, and this may be accomplished by delivery to the payee himself, with proper instructions in relation to the condition.

2.  **EVIDENCE**—Parol—Contracts.  It is elementary that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument.  But the rule is almost equally well settled that parol evidence may be given to prove the existence of any separate parol agreement constituting a condition precedent to the attaching of any obligation under the written instrument; this is not to vary the terms of a written instrument, but to prove that no contract was ever made; that its obligation never commenced.

3.  **TRIAL**—Direction of Verdict.  Where issues of fact are presented by the pleading and supported by evidence and the facts are disputed, or the credibility of witnesses is drawn in question, or a material fact is left in doubt, or there are inferences to be drawn from the facts proven, the case, under proper instructions, should be submitted to the jury, and it is reversible error in such case to sustain a motion to direct a verdict.

(Syllabus by Robertson, C.)

*Error from County Court, Stephens County;*
*W. H. Admire, Judge.*

Action by L. P. Gamble against Chilion Riley and others. Judgment for defendants, and plaintiff brings error.  Reversed and remanded.

*Robert Burns* and *Locke & Locke,* for plaintiff in error.

*Womack & Brown* and *Gilbert & Bond,* for defendants in error.

Opinion by ROBERTSON, C.  This was an action by L. P. Gamble against Chilion Riley and Hugh B. Carter to recover a money judgment on a certain promissory note; it is alleged in the petition that on April 9, 1909, H. B. Carter and Hugh B.

Carter (one and the same person) made, executed, and delivered his note to Chilion Riley in the sum of $500, due six months after date, with interest at eight per cent. per annum until paid; that thereafter, before maturity, and for value, said Chilion Riley indorsed said note to plaintiff, who is now the legal owner and holder thereof; that the same is past due and unpaid, etc. There was no service had on Carter, and the case proceeded against Riley as sole defendant, who answered and admitted the execution of the note and the transfer by him by indorsement to plaintiff, but alleged that such transfer was made by defendant Riley, to plaintiff Gamble, in connection with a subscription for stock of the American Home Life Insurance Company of Ft. Worth, Tex., of which plaintiff represented and pretended to be the duly authorized agent, and that said transfer was made in reliance upon the representations and promises of plaintiff that if defendant Riley would subscribe for 100 shares of such stock at $30 per share and transfer the note as a payment thereon, certificates for such shares would be issued to him, and the balance, the sum of $2,500, would be loaned to him on a tract of 320 acres of land in Oklahoma, with which to pay the remainder of the subscription price of said stock; that said representations were false and untrue, and known to be false and untrue by plaintiff when they were made; that, notwithstanding defendant Riley made application for the loan as agreed, the application was refused, and he could not borrow the money with which to complete the payments. At the time of subscribing for the stock plaintiff gave defendant Riley a receipt for "$500.00 as part payment for 100 shares of stock in the American Home Life Insurance Company," and said receipt contained a clause as follows: "Should said subscription be not approved and accepted, the amount paid as per this receipt will be returned." The subscription for stock was not approved, and the stock was not issued, presumably because Riley did not pay the balance, $2,500, which he alleged Gamble knew would not be paid unless the loan was consummated. Defendant further alleges that he relied upon the representations made by plaintiff to be true, and acted by virtue thereof and was thereby deceived; that the con-

sideration for said note has wholly failed, and therefore no judgment should be rendered against him thereon. Plaintiff's reply admits the subscription agreement as charged in defendant's answer; denies that any other promise or agreement than that embodied therein was made; denies all other allegations thereof, and avers that if the company refused to issue defendant Riley 100 shares of stock in pursuance of his subscription, it was because he failed to pay for the same, in accordance with the terms of his contract. When all the evidence was in the plaintiff interposed a demurrer to defendant's evidence, and the defendant interposed a demurrer to plaintiff's evidence. The court overruled both demurrers. Whereupon the defendant moved the court for a peremptory instruction to the jury for a verdict in his behalf, which was sustained, and the jury was required to return a verdict in favor of defendant Riley, for his costs and the return of the note or its value, in the sum of $550. Plaintiff appeals, and assigns as error: First, the overruling of his motion for a new trial; second, the overruling of his demurrer to defendant's evidence; third, error in peremptorily instructing the jury to return a verdict for the defendant.

It is unnecessary to give separate consideration to the first assignment, inasmuch as it necessarily will be considered in the treatment of the second and third.

It is argued with earnestness that, inasmuch as Gamble represented himself as an agent selling stock for the American Home Insurance Company of Ft. Worth, he was not selling, and did not purport or pretend to sell, stock of his own, and that therefore he, representing himself as agent for a named principal, is not liable personally on a promise made in his principal's behalf, or for the return of the money received by him, unless he is shown to have acted without authority, or to have been guilty of actual fraud or misrepresentation. For the purpose of considering plaintiff's demurrer to the defendant's evidence, we must admit the truthfulness of his evidence and give to it every inference and conclusion that may be reasonably drawn from it. Based upon the issues joined by the pleadings, we have a right to say that Stuart & Walker, the promoters of the Amer-

ican Home Life Insurance Company, as well as the Insurance Company, never had any knowledge of the transfer of the note from Riley to Gamble, as may be gleaned from plaintiff's own testimony (Record, p. 31) which is as follows:

"Q. If you paid the company for the note, why didn't you have them indorse it to you? A. I didn't pay the company for the note. Q. What did you pay them for it? A. For the $500? Q. Who was to get the $500? A. Stuart & Walker gets it. Q. You never have delivered the note to Stuart & Walker? A. No; they didn't know anything about it. They never did hear of it. Q. Didn't they ask you what the $500 was for? A. It shows that. Q. But didn't you tell them whether you got the note or whether you got the money? A. It was none of Stuart & Walker's business."

Plaintiff claims to be an innocent purchaser and a *bona fide* holder of the note. He gave Riley a receipt for the note at the time it was indorsed to him, in which he promised to return the same in case the stock was not issued. Now he claims that he acted merely as an agent for the Insurance Company, and that Riley had full knowledge of his capacity in that respect, and that therefore he should not be liable for the return of the note unless he acted without authority or was guilty of fraud. If he had no authority to make the agreement to return the note in case the stock was not delivered, how could he promise that his principal would return the note or its equivalent when the note never left his hands and was never in possession, or the property of his so-called principals? Why did he give Riley such a receipt and then keep the note in his possession as his own personal property, unless he assumed the responsibility of seeing that the stock was issued by the company according to the contract? He insists now that the fault for the nonissuance and nondelivery of the stock lies with Riley; that he refused to comply with the terms of the contract; and yet he (Gamble) bound the company, or himself (it makes no difference now which), by his contract voluntarily indorsed on the subscription agreement that "the above unpaid part of this subscription may be paid with a loan to be made by the American Home Life Insurance Company to the purchaser hereof upon real estate approved by the Commis-

sioner of Insurance of Texas." The application for the loan was turned down, and, according to the claim of Riley and the agreement of Gamble in his receipt for the note, the trade failed thereby, and the note was to be returned to him.

Plaintiff strenuously objected to the introduction of testimony in support of this contention of Riley on the ground that it tended to vary the terms of a written contract; that when the agreements and understandings of parties to a contract are reduced to writing, the written contract supersedes all oral agreements and is the best evidence of the intentions of the parties. As a general proposition this is true, but the present case does not come within that rule. Here the subscription agreement did not constitute the whole contract made by the parties, but only a portion of it. The main contract was not to become operative or binding until the happening of certain contingencies, which from the record appears not to have transpired owing to the failure of one or the other of the parties to do their duty under the terms of their contract. Which party is in default and therefore to blame, if either, is not for us to say, nor was it for the trial court; but it was primarily a fact for the jury to determine. The subscription agreement (which carried with it also the title to the note in question) was not a binding obligation on Riley until the happening of a certain contingency; i. e., the loaning of $2,500 by the American Home Life Insurance Company to Riley with which to complete the payment of the balance of the subscription. This is Riley's theory, well pleaded, and he attempted to prove the same. If he could satisfy the jury of the truthfulness of this answer, it will be sufficient defense to plaintiff's cause of action. *Mitchell v. Altus State Bank*, 32 Okla. 628, 122 Pac. 666.

In *Colonial Jewelry Co. v. Brown*, 38 Okla. 44, 131 Pac. 1077, it is said:

"We do not understand that evidence offered for the purpose of showing that a written instrument was delivered conditionally constitutes contradicting or varying a written instrument by parol. Such evidence does not tend to show any modification or alteration of the written agreement, but that it never became operative, and that its obligation never commenced. A

written contract must be in force to make it subject to the parol evidence rule. Such a contract cannot become a binding obligation until it has been delivered. Its delivery may be absolute or conditional. If the latter, then it does not become a binding obligation until the condition upon which its delivery depends has been fulfilled."

See, also, *Tovera v. Parker*, 35 Okla. 74, 128 Pac. 101; *Horton v. Birdsong*, 35 Okla. 275, 129 Pac. 701, in which it is said:

"A promissory note may be delivered conditionally, and this may be accomplished by delivery to the payee himself, with proper instructions in relation to the condition."

In 4 Am. & Eng. Ency. Law, p. 204, the following rule is found:

"Bills and notes may be delivered to take effect, not at all events, but conditionally upon the happening of a future contingency, and this may be accomplished, either by a formal delivery in escrow into the hands of a third person for the promisee, or by delivery to the promisee himself in the nature of an escrow; the intervention of a third person not being absolutely necessary, according to the better doctrine, to make the transfer in effect conditional."

In *Lyons v. Stills*, 97 Tenn. 514, 37 S. W. 280, it was said in effect: That when an unconditional note is given for the purchase of certain property, parol evidence is admissible to show an option on the part of the purchaser to rescind the sale within a certain time, as this does not contradict the note, but sets up an independent agreement, made at the same time, that upon a condition or contingency the note was to become void.

In Joyce's Defenses to Commercial Paper, sec. 312, it is said:

"No rule is more elementary than that parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. But the rule is almost equally well settled that parol evidence may be given to prove the existence of any separate parol agreement constituting a condition precedent to the attaching of any obligation under the written instrument. This is not to vary a written instrument, but to prove that no contract was ever made; that its obligation never commenced."

In view of the foregoing it is clear that the court did not err in refusing to sustain plaintiff's demurrer to defendant's evi-

dence. The question in this case depends upon the facts and as there was conflicting evidence on the material issues, it was error for the trial court to sustain a motion for a directed verdict.

"Where issues of fact are presented by the pleading, and supported by evidence and the facts are disputed, the credibility of witnesses is drawn in question, or a material fact is left in doubt, or there are inferences to be drawn from the facts proven, the case, under proper instructions, should be submitted to the jury, and it is reversible error in such case to sustain a motion to direct a verdict."

For the reasons given, the judgment should be reversed, and the cause remanded, with instructions to grant a new trial.

By the Court: It is so ordered.