Arthur CURREY, Plaintiff in Error,

v.

WILLARD STEAM SERVICE, Inc., an Oklahoma Corporation, and H. D. Willard, Defendants in Error.

No. 37751.

Supreme Court of Oklahoma.

Feb. 4, 1958.

Charles Sims, Seminole, for plaintiff in error.

Wells & Wells, by Marion R. Wells, Seminole, for defendants in error.

HALLEY, Justice.

This action was filed in the Superior Court of Seminole County by Arthur Currey against Willard Steam Service, Inc., a corporation, and H. D. Willard, praying for a money judgment of $3,150 as a distribution of his share of dividends due, plus six per cent interest from Willard Steam Service Co., Inc., and for a dissolution of such corporation, an accounting and that the assets be distributed in kind, after plaintiff has received such dividends as he is found entitled to receive.

Plaintiff alleged that in 1952 the above named corporation was organized and five shares of stock were issued with a par value of $100 per share. Three shares were registered in the name of H. D. Willard, one share in the name of Charles Sims and one share in the name of B. E. Himes. The last two shareholders named held their shares for the use and benefit of Arthur Currey and H. D. Willard, who formed the corporation under a written agreement that they would each own one-half of the outstanding stock.

That the corporation was chartered and has since been in business, with H. D. Willard being the chief executive of the corporation and was to be compensated for his services and expenses in such sums as he determined.

It was further alleged that there had been regular meetings of stockholders and directors and minutes thereof prepared from information furnished by H. D. Willard, but there never had been any dividends publicly declared. It was charged that H. D. Willard had withdrawn $3,150 from the corporation, not as compensation for salary for services, but as a stockholder, but nothing was paid to Arthur Currey who was equally entitled thereto as H. D. Willard, who had been president of the corporation at all times.

Plaintiff alleged that there was a hopeless deadlock between him and H. D. Willard over the affairs and management of the corporation with no person having control.

The defendants admitted the organization of the corporation on October 6, 1952, and alleged that prior thereto Arthur Currey and H. D. Willard had entered into a written agreement whereby Arthur Currey agreed to furnish $8,000 capital and defendant H. D. Willard was to perform all services necessary for the operation of the business, and that when Arthur Currey had been repaid the $8,000 advanced by him, plus four and one-half per cent interest thereon, the parties would each own one-half of all outstanding stock in the corporation.

It was alleged that Arthur Currey had received the cash advanced by him, plus interest, by March 31, 1955, when these parties became the sole owners of all stock and assets of Willard Steam Service, Inc., and assets thereof in equal shares.

That on October 17, 1955, Arthur Currey sold all his interest in the corporation to H. D. Willard for the sum of $2,500. This contract was reduced to writing and a copy attached to the answer of defendants as exhibit B. Since it is the basis of much controversy, we hereby set out the body thereof as follows:

"Contract

"This contract made and concluded this 17th day of October, 1955, by and between Arthur Currey of Seminole, County of Seminole and State of Oklahoma, party of the first part, and H. D. Willard, of Seminole, Seminole County and State of Oklahoma, party of the second part, in these words:

"The said party of the first part covenants and agrees to and with the said

party of the second part, to sell all his stock in the Willard Steam Service, Inc. a corporation organized under the laws of the State of Oklahoma, and having as its address Seminole, Oklahoma, to said party of the second part for the total sum of $2,500 (Two Thousand, five hundred dollars).

"The party of the second part agrees to make a reasonable effort to make monthly payments on this indebtedness of $500.00, the receipt of the first payment of $500.00 being acknowledged by the party of the first part. However, in no event shall the contract be declared null and void in the event any monthly payment, as set out above, be defaulted.

"Further, it is agreed by and between the parties that no interest shall accrue on the balance of this account at any time.

"Further, at the time of full settlement of this account, in the total amount of $2,500.00, the party of the first part agrees to transfer any and all stock in the said Willard Steam Service, held by him, to the party of the second part.

"In witness whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written.

"Witnesses:
"/s/Ruby Stafford /s/Arthur Currey
"/s/B. E. Himes  /s/H. D. Willard"

H. D. Willard alleged that since the sale above mentioned he has been the sole owner of the stock and assets of the corporation; that when the above contract was executed H. D. Willard paid $500 as part of the consideration, leaving a balance due of $2,000. On December 5, 1955, another $500 was paid leaving a balance due of $1,500, and on June 30, 1956, Willard paid another $500, leaving a balance due of $1,000, which defendant Willard admits that he owed, and which he has offered to pay, but Arthur Currey refused to deliver the stock which he has been holding as security.

Defendant alleged that Arthur Currey has no interest in the stock or assets of the corporation and has had no interest therein since October 17, 1955, and is not entitled to an accounting, dividends or earnings nor to ask for a dissolution.

Defendant prayed that plaintiff take nothing, and tendered the $1,000 by defendant to the plaintiff and prayed that plaintiff be ordered to deliver to him all of the stock now held by plaintiff and for costs.

Plaintiff filed a reply in which he alleged that the above contract of October 17, 1955, was executed, but void for reasons of uncertainty and indefiniteness, and because its execution by plaintiff was under misrepresentation of facts by the defendant, who was president and the active operating head of the corporate defendant, and that had H. D. Willard disclosed all the facts the plaintiff would not have signed the contract; that plaintiff would be entitled to all proper dividends, which he thought the contract gave him; that H. D. Willard had authority to draw checks on the corporate defendant and it was the defendant Willard who had drawn checks on corporate funds and used them for his personal gain.

Plaintiff tendered such sums as had been paid him under the contract of October 17, 1955. His prayer was that set forth in his petition, and further prays that the contract of October 17, 1955, be held void, or in the alternative that he be adjudged entitled to his proper share of all dividends declared or paid, or that should have been declared or paid until H. D. Willard makes full payment under the contract.

Defendants filed a reply to plaintiff's reply in the nature of a general denial, and prayed for the same relief as in their answer.

At the conclusion of the evidence the defendants demurred to the evidence of the plaintiff and the court sustained the demurrer. Judgment was entered for the defendants and the plaintiff has appealed. Parties will be referred to as they appeared in the trial court.

The plaintiff has submitted four propositions and defendants have elected to answer them together. Plaintiff asserts that the above quoted contract between the parties, dated October 17, 1955, is not enforceable because indefinite, wanting in mutuality, and because it provides that it cannot be declared null and void in the event of default in monthly payments provided, and in failing to provide for interest on past due installments. In support of this contention plaintiff cites Section 104, 15 O.S.1951, which provides that a contract is void if impossible of performance or so vaguely expressed as to be wholly unascertainable.

The contract between the parties here is unusual in several respects, but is very definite in others. We think it clear that Arthur Currey agreed to convey to H. D. Willard all his interest in the corporation mentioned. The consideration is very definitely fixed at $2,500. Of this sum $500 was paid when the contract was signed. H. D. Willard "* * * agrees to make a reasonable effort to make monthly payments on this indebtedness of $500.00, the receipt of the first payment of $500.00 being acknowledged by the party of the first part. However, in no event shall the contract be declared null and void in the event any monthly payment, as set out above, be defaulted."

The next clause is an agreement that no interest shall accrue on the balance of this account at any time.

It then agreed that upon payment of $2,500, Arthur Currey will transfer all stock held by him in the corporation to H. D. Willard.

There is not found in the contract one word indicating that plaintiff was to receive, in any event, one cent above the $2,500 which he agreed to take for his entire interest in the corporation.

The plaintiff freely admitted that he had received the $8,000 advanced by him as the necessary cash for the formation and early operation of the corporation by H. D. Willard, plus interest thereon. He admitted that he agreed with Willard to sell him his entire interest in the corporation for $2,-500. He told Willard to have the contract drawn up. It was drawn by Mr. Himes, an accountant. After reading it over he said he asked Willard if he would pay him $500 per month, and upon an affirmative answer signed the contract. Plaintiff testified that all he wanted was the $2,500. He admitted that he had received $1,500 of the $2,500. He was asked:

"Q. When you signed the contract, you intended that if he missed one of the payments, at the time, you wouldn't try to vacate the contract, did you? A. No.

"Q. And you knew that you had agreed when you signed that if he missed any payments, the balance would never draw any interest? A. Certainly I did.

\* \* \* \* \* \*

"Q. Did you make a demand on Mr. Willard for the balance of this contract, or $1,000.00, before you brought the lawsuit? A. No.

"Q. And at the time you brought the lawsuit, you never had demanded payment of the $1,000.00, had you? A. No, sir.

"Q. You understand now that by Order of the Court, Mr. Willard has put into the Clerk's office $1,000.00 to finish the payment of this contract? A. Yes; I understand that.

"Q. Now, I believe you stated that had Willard paid you $500.00 in November, '55, and $500.00 in December, '55, and $500.00 in January, '56, and $500.00 in February, '56, this lawsuit would have never been? A. That's exactly right.

"Q. In other words, that's all you wanted when you sold your share of it, was that $2500.00? A. That's what I agreed to do.

"Q. You agreed to take that for your stock? A. Yes, sir.

"Q. And when you get the $2500.00, you will have received what you agreed to take for the stock. Is that right?

A. In one sense of the word, I guess you would say it is right. In my way of figuring, I don't say that's right. I would never have signed the contract had I not know that I was still a copartner in the organization. Had he lived up to his agreement with me, I would have never pushed the other part of it at all. My intention was to take the $2500.00. That is what I agreed to do.

"Q. You agreed to that? A. That is what I agreed to do at the time. I intended to do it. He didn't live up to his agreement, but the contract I had signed still left me a partner in the corporation.

"Q. What interest do you have? A. Since he didn't live up to his contract, I felt like I was entitled to my part of what the corporation had done up until the time that this was settled.

"Q. You never took any part in the operation? A. That was understood when we formed it.

"Q. I know that. You never did any work in the corporation? A. No, sir.

\* \* \* \* \* \*

"Q. So, when you signed the contract, it was your opinion that you were taking $2500.00 for your stock. Is that right? A. I have said that all the time."

The testimony of H. D. Willard is generally in accord with that of the plaintiff. That of the accountant who drew the contract of October 17, 1955, shows clearly that the plaintiff had access to the corporate records at all times and could have known at any time the exact financial condition of the corporation. This was not denied by the plaintiff.

An examination of all the evidence convinces us that the parties to the contract above quoted had substantially the same opinion as to the meaning of its terms. Plaintiff admitted that had he received the $2,500 for his full interest this lawsuit would not have been filed. He was asked:

"Q. Now, going back to October 17, 1955, just what do you think was the fair market value of half interest in that business?

\* \* \* \* \* \*

A. I figured it was around $4500— $4000 to $4500, but I also figured this: I had not been out anything. Jolly had paid me back everything that I put in. Just like I told him, I'd sell it to him cheaper than I'd sell it to anybody else in the whole country, because he had made the organization what it was, and it was for him that I offered to take the $2500.00.

"Q. And if he had lived up to that Hand-shaking agreement, that would have been all of it. A. That would have been all of it."

Plaintiff contends that H. D. Willard used corporate funds to pay his personal debts. Under the facts before us we find no merit in this contention. Plaintiff knew that he was being paid his $8,000 plus interest from profits made by the corporation because Willard had no other way of paying the $8,000 loan advanced by Mr. Currey when the corporation was formed and secured the necessary equipment to begin operations.

H. D. Willard, as president and active executive of the corporation is not shown to have concealed from the plaintiff as an inactive stockholder any facts concerning corporate matters, and the plaintiff admits that he had access at all times to the records of corporate operations. The plaintiff simply failed to exercise his rights in this respect.

Under the terms of the contract here involved and as interpreted by the parties thereto, the plaintiff was clearly entitled to the full $2,500 provided by the contract for all his interest in the corporation and was not entitled to any share in dividends accruing after he had agreed to accept as full payment for his entire share in the corporation the sum of $2,500. The contract contains no provision from which it

may be inferred that the stock sold for $2,500 also includes any dividends accrued or accruing.

■ The rule is well established in this jurisdiction that where a contract is ambiguous the court may look to the construction placed thereon by the parties thereto in order to ascertain its true meaning.

The rule as to the interpretation of contracts has been announced in many cases. In Gillham v. Jenkins, 206 Okl. 440, 244 P.2d 291, it is said:

"In the interpretation of a contract the intention of the parties, at the time the contract was made, is a paramount objective, and in arriving at the intent the conditions and circumstances under which the contract was made and the subsequent acts and conduct of the parties may be considered."

Again in Joachim v. Board of Education of Walters, 207 Okl. 248, 249 P.2d 129, 130, it is announced:

"Where the meaning of the terms used in a written contract is not clear, but such terms have been construed and acted upon by the parties interested, such construction will be adopted, even though the language of the contract may be susceptible of another construction."

While the payment of dividends is not mentioned in the contract being considered, plaintiff now demands that dividends be paid him which he claims accrued pending the payment to him of $2,500 for his entire interest. He made no such demand until the filing of this action. We think it clear that plaintiff and defendant had no such intention when the contract was signed.

The judgment of the trial court is affirmed with directions that the plaintiff be paid the $1,000 deposited by defendant to complete payment of the $2,500 agreed upon by the parties in the contract and that H. D. Willard receive plaintiff's stock in the corporation.

CORN, V. C. J., and JOHNSON, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.

WELCH, C. J., and JACKSON, J., dissent.