Max PRAY, Plaintiff In Error,

v.

**KIDD WILLIAMS DRILLING CORPORA-TION, a Delaware Corporation, Defendant in Error.**

No. 37979.

Supreme Court of Oklahoma.

March 8, 1960.

Brown & Brown, Oklahoma City, by Paul Brown, Oklahoma City, for plaintiff in error.

Monnet, Monnet & Monnet, Tulsa, by Buford D. Monnet, Tulsa, for defendant in error.

JACKSON, Justice.

This is an appeal by defendant, Max Pray, from judgment on directed verdict for plaintiff, Kidd Williams Drilling Corporation, in the amount of $24,128.07, as balance due under terms of a certain written contract. In accordance with said contract, plaintiff drilled a well on a leasehold in Garvin County, Oklahoma, owned by defendant (⅜ths), Kenneth Ellison (⅛th), and Redlands Oil Company (⅝ths). The contract recited that defendant was to be the operator of the well when completed, and defendant was the only one of the lease owners who was a party to or who signed the contract. Upon completion of the well, plaintiff, as previously requested by defendant, billed each of the lease owners for their pro rata part of the contract amount, according to their ownership interest. Defendant and Kenneth Ellison paid their respective parts, but Redlands did not. After trying unsuccessfully for several months to collect from Redlands, plaintiff brought action against defendant to recover the balance due plaintiff under the contract, resulting in the judgment appealed from.

Defendant's answer admitted the execution of the written contract, but alleged that the said contract was in fact negotiated by

Redlands; that plaintiff mailed the contract to defendant while he was in Florida, and that prior to executing same defendant informed plaintiff that defendant owned only a ⅜ths interest in the lease, and would pay that portion of the contract amount, but that plaintiff should bill the other owners for the balance, according to their respective interests; that the written contract sued on was not the true contract between the parties, defendant having refused to execute the written contract until plaintiff had agreed to the modification thereof, which amounted to a new oral agreement under which plaintiff agreed to hold defendant liable for only three-eighths of the contract amount.

The salient provisions of the written contract, which was introduced by plaintiff, are, as follows:

"Drilling Contract.

"This Agreement, made and entered into this 14th day of March, 1956, by and between Max Pray, Suite 300, Palmolive Building, Chicago, Illinois, hereinafter called 'Company' and Kidd Williams Drilling Corporation, a Delaware Corporation, hereinafter called 'Contractor'.

"Witnesseth"

"That the parties hereto, in consideration of their mutual covenants hereby agree as follows:

"Contractor agrees to drill a well for Company for the purpose of obtaining oil and gas. Said well shall be known as Pray-Redlands #2, Freeman and located in the NE/4 SW/4 of Section 17–4N–4W, Garvin County, Oklahoma.

* * * * * * * * * * *

"When said well has been completed in accordance with the terms and conditions herein set forth, Company agrees to pay Contractor as follows:

"(1) $4.50 per foot for each lineal foot of hole actually drilled above the contract depth. The depth of the hole shall be measured from the surface of the ground.

"(2) Company shall pay Contractor for work commonly known as 'Day Work' at the following rates per 24-hour day:

"Rotary—With Drill Pipe $850.00<br>"Rotary—Without Drill Pipe $750.00.

* * * * * * * * * * *

"In Witness Whereof, the parties hereto have executed this agreement the day and year first above written.

"/s/ Max Pray<br>"/t/ Max Pray

"Attest: /s/ John T. Lenoir (Seal)　　　　Kidd Williams Drilling Corp.<br>　　　　　　　　　　　　　　　　　　　　　　"By /s/ O. D. Williams<br>　　　　　　　　　　　　　　　　　　　　　　　　　　President.

　　　　"Sec'y-Tres."

Plaintiff's letter transmitting the contract to defendant for execution, Defendant's Exhibit No. 1, is, as follows:

"Kidd Williams Drilling Corporation
  "206 Kennedy Building
  "Tulsa 3, Okla.
  "March 14, 1956.

"Mr. Max Pray
"700 North Lakeway
"Palm Beach, Florida

"Dear Mr. Pray:

"As per instructions of Mr. W. Y. Pickering of Redlands Oil Company, we are enclosing an original and three copies of the Drilling Contract for the Pray-Redlands #2 Freeman located in the NE/4 SW/4 of Section 17–T4N–R4W, Garvin County, Oklahoma. All copies have been executed on behalf of Kidd Williams Drilling Corporation.

"Mr. Pray, if you will execute all copies, keeping the original for yourself, and mailing the three copies back to us, we will keep one copy, mail one to the Redlands Oil Company and the other to Mr. Kenneth Ellison.

"Trusting that this arrangement meets with your approval, and sincerely hoping that you rapidly recover from your recent illness, I remain,

"Very truly yours,

"Kidd Williams
  Drilling Corporation

"By /s/ O. D. Williams
  "/t/ O. D. Williams"

Defendant testified that he received the above letter on March 15th or 16th, and that on the 18th or 19th he had a telephone conversation with a representative of plaintiff, as follows:

"Q. What was said in that conversation with reference to this contract and your executing the contract?

"A. They were making up and, in fact, I think they had actually started drilling and they had no signed contract on this well and they wanted a signed contract. So I agreed to execute the contract which wasn't along the lines we originally talked about, I agreed to execute it, providing they would bill, charge, and collect everybody involved which they had knowledge of, charge each one of us our pro rata share as our interest in the lease appeared and that was agreeable."

Defendant further testified that he signed and mailed the contract to plaintiff by air mail from Florida on March 19th, and that on the same day he dictated a letter to plaintiff by telephone to defendant's Chicago office which was signed and mailed to plaintiff by his secretary, as follows: (Defendant's Exhibit No. 2)

"March 19, 1956

"Mr. O. D. Williams
"Kidd Williams Drilling Corp.
"205 Kennedy Building
"Tulsa, Oklahoma

"Dear Mr. Williams:

"I am dictating this letter on the phone to my office in Chicago. I mailed the copies of the drilling contract to your office from Florida.

"As Redlands Oil Company, Kenneth Ellison and myself are involved in this operation, it would be much simpler for us if you would bill each of us direct for our pro rata share of the drilling costs.

"You should bill Redlands Oil Company for 1/2, Kenneth Ellison for 1/8 and me for 3/8.

"You can just make your regular statement and break down our pro rata share at the end of the statement, sending each of us a copy.

"If this meets with your approval, please let me know.

"Very truly yours,

"MP:djh
"cc: Redlands Oil Company
  "Kenneth Ellison"

Plaintiff's reply to defendant's letter of March 19th, appears as Defendant's Exhibit No. 3, as follows:

"Kidd Williams Drilling Corporation
"206 Kennedy Building
"Tulsa 3, Okla.

"March 20, 1956

"Mr. Max Pray
"700 North Lakeway
"Palm Beach, Florida

"Dear Mr. Pray:

"I am in receipt of your letter, on March 19, 1956, in which you enclosed the drilling contracts.

"It meets with our approval, for us to bill each of you direct for your pro rata share of the drilling costs. We will make your regular statement and break down your pro rata share at the end of the statement, sending each of you a copy. We will bill Redlands Oil Company for ½, Kenneth Ellison for ⅛, and you for ⅜.

"Hoping this is satisfactory with you, and if we can be of any other service to you, please let us know.

"Very truly yours,

"Kidd Williams
    Drilling Corporation

"By /s/ O. D. Williams
    "/t/ O. D. Williams"

Defendant's first contention is that his requirement that plaintiff bill, charge and collect from each of the lease owners, pro rata, was a condition precedent to defendant's execution and delivery of the contract, and that the contract did not become effective until plaintiff agreed to that condition.

We are cognizant of the rule which permits the introduction of parol evidence to prove a separate agreement which constitutes a condition precedent to the taking effect of a written contract; however, the cases cited by defendant in support of this contention, are, we think, distinguishable on the facts from the instant case. In Colonial Jewelry Co. v. Brown, 1913, 38 Okl. 44, 131 P. 1077, plaintiff jewelry company sued defendant on a jewelry order, and defendant was permitted to prove a separate parol agreement that the order was not to become effective until five days after its execution. In Yeager v. Jackson, 1933, 162 Okl. 207, 19 P.2d 970, defendant was allowed to introduce parol evidence that a written realty purchase contract was not to become effective unless the seller should give possession by a certain date. The written contract did not contain any provision for transfer of possession to the buyer. In Gamble v. Riley, 39 Okl. 363, 135 P. 390, we held that parol evidence was admissible to show that the written subscription agreement did not constitute the whole contract and was not to become binding until the happening of a certain contingency.

It will be noted that in all of these cases, the parol evidence did not contradict or vary the terms of the written agreement. As we stated in the syllabus of Colonial Jewelry v. Brown, supra:

"Such evidence does not tend to show any modification or alteration of the written agreement, but that it never became operative, and that its obligation never commenced."

We recognized the importance of this distinction in the case of Moore v. Emerson, Okl., 325 P.2d 437, 438, wherein we said in the first paragraph of the syllabus:

"Where a writing or memorandum of contract does not purport to disclose the complete contract, or if, when read in the light of attendant facts and circumstances, it appears to contain only part of the agreement entered into by the parties, parol evidence is admissible to show what the rest of the agreement was; *but such parol evidence must not be inconsistent with or repugnant to that part of the agreement integrated in the writing or memorandum."* (Emphasis added.)

The reason for the distinction is apparent when we consider the provisions of 15 O.S.1951 § 137:

"Writing excludes oral negotiations or stipulations.—The execution of a contract in writing, whether the law

requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

And in Warren v. Pulley, 193 Okl. 88, 141 P.2d 288, we stated in paragraph one of the syllabus:

"In absence of fraud, accident or mistake, evidence of prior or contemporaneous oral agreement is inadmissible to vary terms of written contract, apparently complete on its face, as to an element or matter with which written contract deals, or as to a subject so closely bound to the matter of the written contract that parties would ordinarily be expected to have embodied it therein. 15 O.S.1941, § 137."

The written contract in the instant case, in plain, concise language, obligates defendant to pay the entire contract amount, which is conceded by defendant. The evidence relied on by defendant to establish a condition precedent clearly contradicts the terms of the written contract, inasmuch as it attempts to relieve defendant of the liability imposed by the contract as to $\frac{5}{8}$ths of the consideration due plaintiff.

■ Therefore, such evidence was incompetent under the statute and cases cited, and was properly disregarded by the trial court, whether such evidence was objected to or not. Seal Oil Co. v. Roberson, 175 Okl. 140, 51 P.2d 801.

■ Defendant's second contention is that his letter of March 19th, in which he requested that plaintiff "bill each of us direct for our pro rata share of the drilling costs," and plaintiff's reply of March 20th, agreeing to defendant's request, constituted a new proposal and acceptance, and a binding agreement under which plaintiff agreed to hold each owner of the lease liable for his pro rata share of the contract amount.

Was defendant's letter of March 19th, a qualified acceptance of the written contract, or a new proposal? Although the letter was dictated and mailed on the same day defendant returned the executed written contract to plaintiff, it did not expressly purport to qualify defendant's acceptance of, or to modify the written contract as to defendant's liability thereunder, and it did not apprise plaintiff of any such intention or understanding on the part of defendant. It appeared to be merely a request that plaintiff bill each lease owner direct, because "it would be much simpler for us". Simpler than what? Simpler than billing defendant for the entire amount according to the contract, which would result in defendant, as lease operator, having to collect from his co-owners their pro rata part? And plaintiff's reply merely acceded to defendant's request.

We are of the opinion that the trial court did not err in interpreting the letters contrary to defendant's contention.

Defendant, in his fourth contention, argues that plaintiff's action in billing the lease owners separately constituted a construction of the written contract by plaintiff as releasing defendant from $\frac{5}{8}$ths of the contract amount.

A somewhat similar situation was presented in the case of McConnell v. Holderman, 1908, 24 Okl. 129, 103 P. 593, 594, wherein it appeared that defendant engaged plaintiff to procure oil and gas leases to be taken in the names of several oil companies designated by defendant. In an action by plaintiff against defendant to recover the consideration agreed upon, defendant contended that the parties intended that plaintiff was to look to the several oil companies for the consideration. We affirmed judgment on verdict for plaintiff, and stated that plaintiff's motion for directed verdict should have been sustained. The following statement from the opinion is, we think, pertinent here:

"The defendant, to break the force of the foregoing contract, which clearly appears to us to have been an agreement on the part of the defendant to employ the plaintiff personally, and not as an agent, presented in evi-

dence a showing that after all of the work had been done, the plaintiff had sent to him bills for leases to the oil companies charged in the names of the companies to whom made, and that furthermore, he thereafter wrote a letter to defendant in which he urged defendant to have the parties to whom the leases were made pay for the same; and, furthermore it is insisted that the fact that the leases were not taken in the name of defendant, but were taken in the names of the different oil companies, was evidence that the plaintiff understood and knew that he was not working for the defendant, but was hired by and was working for these oil companies. We are not able to agree with counsel in this claim. The evidence which we have set forth above, which shows the contract and the terms of it, is in nowise affected or modified by any of the facts insisted by counsel for defendant. There was nothing inconsistent therewith in plaintiff sending defendant his bill charging in separate items the leases taken showing the different companies in which they were written."

■ We are of the opinion that plaintiff did not construe the contract in the manner contended by defendant, in billing and attempting to collect from the separate lease owners their pro rata part according to their respective ownership interests, for the reason that such conduct did not go beyond mere compliance with defendant's request for separate billing, and did not evince any intention to release defendant from his full liability under the written contract.

Defendant argues that plaintiff, by borrowing money from plaintiff's bank on the security of the Redlands invoice, thereby acknowledged that Redlands, and not defendant, was the one obligated to pay the balance due under the contract. This does not add anything to defendant's previous contentions. It could just as well be argued that the act of sending the invoice to Redlands was an acknowledgment that Redlands, and not defendant, was liable therefor. Such conduct on the part of plaintiff was entirely consistent with defendant's request for separate billing, and with plaintiff's position that defendant remained primarily liable for the entire contract amount, according to the contract terms.

The remaining contention of defendant is that the trial court erred in directing a verdict for plaintiff because the question of whether the written contract was modified was one for a jury.

In Coston v. Adams, 203 Okl. 605, 224 P.2d 955, 957, cited by defendant in support of this contention, we stated, in the sixth paragraph of the syllabus, as follows:

"Whether a written contract has been superseded by an oral contract is a jury question *where the facts are in dispute.*" (Emphasis added.)

■■ There was no dispute of facts in the instant case. The telephone conversation with plaintiff's representative, testified to by defendant, occurred prior to the execution of the contract. It was clearly incompetent to vary the terms of the written contract under 15 O.S.1951 § 137. The only real issue presented was whether the letter from defendant to plaintiff, and plaintiff's reply (Defendant's Exhibits No. 2 and No. 3) constituted a modification of the written contract. This was a question of interpretation for the court, not for a jury, unless the letters rendered the contract ambiguous as to the extent of defendant's liability. Defendant does not contend that the contract is ambiguous. In Littlefield Loan & Investment Co. v. Walkley & Chambers, 65 Okl. 246, 166 P. 90, we held, in paragraph two of the syllabus:

"It is the duty of the court to construe unambiguous written instruments introduced in evidence. Instructions submitting to the jury the construction of written instruments in evidence, which contain no ambiguities or uncer-

tainties requiring explanation, constitute error."

The trial court, in directing verdict for plaintiff, obviously interpreted the letters adversely to defendant's contentions, and we find no error in such interpretation and judgment. There was no question for determination by a jury. Baker v. Traders & General Ins. Co., 10 Cir., 199 F.2d 289; Van Horn Drug Co. v. Noland, Okl., 323 P.2d 366.

Judgment affirmed.

HALLEY, JOHNSON, BLACKBIRD, IRWIN and BERRY, JJ., concur.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, J., dissent.

DAVISON, Chief Justice (dissenting).

I am unable to agree with the opinion promulgated by the majority of my associates in this case. I am of the opinion that the trial court erred in sustaining plaintiff's motion for a directed verdict. It is my opinion, after an examination of the entire record, that the matter should have been submitted to the jury for a determination of the intent of the parties and of the agreement made by the parties, as reflected by the evidence.

In Hanna v. Parrish, Okl., 317 P.2d 745, 746, we stated the law to be:

"In passing upon a motion for a directed verdict, the trial court must consider as true all the evidence favorable to party against whom the motion is directed, together with all inferences that may be reasonably drawn therefrom, and disregard all conflicting evidence favorable to the movant."

I will refer to the plaintiff as Williams, the defendant as Pray, Redlands Oil Company as Redlands, and Kenneth Ellison as Ellison.

Applying the above rule of law the following evidence and reasonable inferences therefrom must for the purposes hereof be considered as true.

It appears from the record that the matter of drilling the well had been the subject of oral and written communications prior to the submission of the contract of March 14, 1956, to Pray in Florida. Redlands had talked to Williams concerning the drilling and the ownership of the leasehold and Pray had told Williams he would be responsible for only his part of the bill (CM 61). Redlands, in which Pray had no interest, wrote Williams on February 27, 1956, requesting submission of a bid and directing it be submitted to Pray (CM 123).

Pray received the Williams letter of March 14, and the contract, quoted in the majority opinion and Williams called Pray in Florida on March 19. Pray was in Florida recuperating from an illness. Williams had already moved equipment on the lease. In that conversation Pray agreed to sign the contract providing "they would bill, charge, and collect (sic) everybody involved which they had knowledge of, charge each one of us our pro rata share as our interest in the lease appeared and that was agreeable". On the same day Pray dictated to his Chicago office and there was mailed to Williams the letter relative to billing each interest holder direct for their pro rata share. Williams then wrote Pray the letter of March 20 agreeing to bill each interest holder direct for their pro rata share of the drilling. These letters are set forth in the majority opinion.

After completion of the well on May 8, 1956, Williams addressed and submitted a separate invoice to each of the interest holders reflecting the work done, the total charge, and a breakdown of the pro rata share owed by Redlands, Pray and Ellison. Ellison paid his share. Pray paid his share May 17, 1956. Redlands did not pay.

The record reflects that thereafter and on May 25, 1956, Williams addressed and submitted separate credit memorandums to Ellison and to Redlands reciting a total credit and a breakdown of the pro rata credit Ellison, Redlands and Pray were entitled to. The record does not contain a credit memorandum addressed to Pray.

From May 8, 1956, to November, 1956, Williams tried to collect from Redlands and

was looking to Redlands, "Until we had exhausted every effort to collect it" (CM 132). Williams borrowed money from a bank with the Redlands indebtedness as security and on September 14, 1956, wrote Redlands insisting "an arrangement be made" and reciting the bank "refused to extend your note beyond October 2, 1956" (CM 131). Redlands at all times admitted its indebtedness and on June 22, 1956, wrote Williams (CM 133) regarding payment of $10,000 cash and assignment of part of the runs from the well to pay and secure the balance. Apparently this failed because of inability to pay the $10,000 (CM 134).

Williams made no demands upon Pray except that in a telephone conversation a representative of Williams "more or less inferred that he was going to try to hold me for it and I wrote him a letter at that time and reminded him of our agreement in the thing" (CM 89). This letter from Pray was dated August 9, 1956. Williams filed this suit November 2, 1956.

This is in the main the evidence with aid of reasonable inferences therefrom supporting the defense of Pray. For the purpose of the motion for directed verdict it must be taken as true and all conflicting evidence favorable to Williams is to be disregarded.

At the time of signing the contract of March 14, 1956, Pray was away from his office in Chicago and recuperating from an illness. Williams had moved upon the lease. It is apparent that the parties believed a type of emergency existed. The contract as drawn was not satisfactory to Pray because it was not drawn along the lines agreed upon that each interest holder pay their pro rata share. Because of the situation Pray signed the contract upon condition Williams would bill, charge and collect from each interest holder their pro rata share. This was agreeable to Williams. If Williams had not agreed to this condition then Pray would not have signed the contract.

In Yeager v. Jackson, 162 Okl. 207, 19 P.2d 970, 971, this court said:

"Parole evidence is not admissible to vary the terms of a written contract, but parol evidence may be introduced to prove a separate parol agreement constituting a condition precedent to the taking effect of the written contract."

To the same effect see: Gamble v. Riley, 39 Okl. 363, 135 P. 390; Waggoner Bank & Trust Co. v. Doak, 69 Okl. 245, 172 P. 61; Commercial National Bank of Muskogee v. Ahrens, 117 Okl. 65, 245 P. 557.

If the condition of separate billing, charges and collection pro rata from the interest holders was not agreed to by Williams and so done, then no pro rata liability would have attached to Pray. It goes to the very existence of the contract.

Furthermore the contract, when construed in the light of the surrounding circumstances, is capable of interpretation that Pray, Ellison and Redlands were to be obligated only on a pro rata basis. In the letter of February 27, 1956, from Redlands to Williams inviting submission of a bid for the drilling of a well, reference is made to the separate interests of Redlands and Pray. In the letter of Williams to Pray submitting the contract to Pray reference is made to the separate interests of Ellison, Pray and Redlands. The contract describes Pray as "Company". The letter of Williams of March 20, 1956, is addressed to Pray individually and expresses approval " * * * for us to bill each of you direct for your pro rata share * * * ". Plurality of persons is expressed.

Since Pray is not a corporation and is not by himself an association, partnership or group of persons or concerns, then use of the word "Company" would not apply to Pray. The term must therefore contemplate and include parties of which Pray is one party. This conclusion is supported by the definition of "Company" given in 15 C.J.S. pages 646 and 647, wherein many illustrations of the use of the word are stated. It is significant that in none of these illustrations is the term limited to a single individual. The conclusion is that the use

of the word in the contract, when considered in connection with the oral expressions and writings of Pray and Williams, substantiates the contention of pro rata liability of the interest holders.

Furthermore the evidence, as considered here, of the condition and actual agreement of the parties does not rest in parol. Pray's letter of March 19 and Williams' letter of March 20 is written evidence of the agreement as finally consummated by them. The original instrument and the two letters constitute the contract. Title 15 O.S.A.1951 § 237, states:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

The contract and Pray's letter of March 19 were received simultaneously by Williams and constituted a qualified acceptance by Pray. This was a new proposal by Pray which Williams could accept or reject. This conclusion is supported by 15 O.S.A. 1951 § 71, when it states:

"An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character, which the proposer can separate from the rest, and which will include the person accepting. A qualified acceptance is a new proposal."

See also Fry v. Foster, 179 Okl. 398, 65 P.2d 1224, in which we said:

"A qualified acceptance of an offer is a new proposal which may be accepted in accord with the terms thereof."

When Williams wrote the letter of March 20 to Pray approving this new proposal and agreeing to bill each of the interest holders for their pro rata share it was an acceptance by Williams of the new proposal made by Pray. These three instruments constitute the contract.

In Lee v. National Refining Co., 181 Okl. 556, 75 P.2d 406, 407, we so held when we said:

"Where a person offers to do a definite thing, and the party to whom the offer is made accepts conditionally, or

introduces a new and material term into the acceptance, his answer constitutes a counter proposal, and if the party to whom the counter proposal is made unconditionally accepts it, such counter proposal and acceptance constitutes a binding contract."

Williams was legally bound to recognize the legal effect of his receipt of the contract and letter from Pray and the acceptance and approval thereof by his letter to Pray. Any contention by Williams that a separate billing and charging of the interest holders for their pro rata share was a favor to Pray is without foundation. Why? Because Pray told Williams in the telephone conversation of March 19 that the contract was not drawn as agreed and that the interest holders were to be billed, charged and collected from on the basis of their pro rata share. In view of this statement Pray's letter could not otherwise be construed. This testimony, for the purpose of the motion for a directed verdict, must be taken as true.

The proof of my conclusions is in the manner in which the parties construed the agreement by their performance of the same. Williams drilled the well and separately invoiced the interest holders for their pro rata share. Ellison and Pray recognized and paid their pro rata share. Williams separately addressed and submitted credit memos to Ellison and Redlands. Redlands defaulted. Months passed and no demands were made by Williams on Pray for payment. In the meantime Williams was demanding and negotiating for payment from Redlands, which admitted the indebtedness. Williams borrowed money from the bank on its account against Redlands. On the evidence being considered Williams recognized the agreement to require billing, charging and collecting from the interest holders their pro rata share according to their interest in the lease.

Decisions of this court recognize the acts of the parties as being evidence of intention and interpretation placed on their agreements. In McDowell v. Droz, 179 Okl. 119, 64 P.2d 1210, it is stated:

"Where it becomes a question of what the agreement of the parties was, the conduct of the parties may be proven to establish the interpretation placed on the agreement by the parties themselves. The mutual interpretation of contracts affords cogent evidence of their meaning.

"The chief object in construing contracts is to ascertain the intention of the contracting parties, and subsequent acts and conduct of the parties may be considered in arriving at the intention."

If it be construed or conceded that the agreement between the parties was uncertain then the parties by their acts may construe the meaning thereof. In Wiebener v. Peoples, 44 Okl. 32, 142 P. 1036, 1037, this court said:

"Where the language of a contract is uncertain and the parties thereto, by their subsequent acts and conduct, have shown that they construed it alike and within the purview of the constructions permitted as possible by such language, the courts will ordinarily follow such adopted construction as the correct one."

See also Currey v. Willard Steam Service, Inc., Okl., 321 P.2d 680, as follows:

"Where the meaning of the terms used in a written contract is not clear, but such terms have been construed and acted upon by the parties interested, such construction will be adopted, even though the language of the contract may be susceptible of another construction.

"In interpretation of a contract, the intention of the parties at the time the contract was made is the paramount objective, and in arriving at the intent the condition and circumstances under which the contract was made and the subsequent acts and conduct of the parties may be considered."

What has been set out above demonstrates the incorrect conclusion reached by the majority opinion and that the law therein cited does not apply to the situation presented by this appeal. The lower court not only undertook to construe the contract and the two letters between Williams and Pray, but also delegated to itself the function of passing upon the effect and meaning of the letters coupled with the conversations and conduct of the parties as interpretive of the parties' agreement. This latter assumed function was an invasion of the province of the jury as determiner of the questions of fact as to what the parties' intent was and what reasonable inference could be drawn from the instruments and acts of the parties in connection therewith. The lower court was without power to determine these questions of fact.

The general law is that prior oral negotiations are merged in the written contract and that oral testimony is not admissible to vary the terms of a valid written instrument. As shown above it is equally true that parol testimony may prove a separate parol agreement constituting a condition precedent to the attaching of any obligation thereunder and that a written contract may be altered by a written contract or executed oral agreement. That is the situation here.

The majority opinion cites McConnell v. Holderman, 24 Okl. 129, 103 P. 593, and a quote out of context thereof which would appear to sustain the opinion. Examination of the decision reveals the decision is not in point under the facts in the instant appeal. In that case the question was liability of an agent because of failure to reveal his principal, whereas in this case there was no question of agency. In that case the agreement was oral, whereas in this case the agreement consists of written instruments and conduct of the parties pursuant thereto. In that case there was no evidence of an agreement that others were to be charged and collected from as appears in the instant case. In that case the plaintiff charged and sent invoices only to the defendant, whereas in this case Williams charged and invoiced the other interest holders as well. In that case the issues were submitted to a jury which returned a verdict for the plaintiff. The statement in

that case that the motion of plaintiff for a directed verdict should have been sustained is at most only dictum or supportive of its opinion that the verdict of the jury reached the right conclusion.

In the instant case the judgment of the lower court should be reversed with instructions to retry the case and submit the same to the jury.