STATEMENT OF FACTS.
This action was commenced on the 6th day of June, 1899, by the defendant in error, Timken Carriage Co., a corporation doing business in St. Louis, Mo., by filing in the district court of Logan county, a petition alleging their corporate capacity under the laws of the state of Missouri, and that *Page 414 
they were engaged in the business of manufacturing buggies, carriages and other vehicles.
That on the ___ day of April, 1898, the plaintiff and defendant, A. A. Humphrey, made and entered into a certain agreement, whereby the said defendant bought of the plaintiff, and plaintiff sold to said defendant, certain merchandise and vehicles for the agreed price of $1,807.94; that the said defendant bought the same by written order, dated March 22, 1898, showing the description of articles and price thereof, and requested the plaintiff to ship said articles by freight as soon as practicable, and proposing to make payment in four months from May 15, 1898. Copy of said order was attached and marked "Exhibit A."
That thereafter, on the 24th day of March, 1898, the defendant, B. F. Berkey, entered into an agreement with the plaintiff (in writing) whereby he also became indebted in said sum to the plaintiff for the articles of merchandise ordered by the defendant Humphrey, which instrument in writing was attached to the petition, and marked "Exhibit B."
That the plaintiff duly accepted said order of Humphrey and agreement of Berkey, and thereafter said contract of sale of said articles became complete; and that in compliance therewith, the plaintiff delivered to Humphrey the goods mentioned in said order according to the terms thereof, by reason whereof said defendants Humphrey and Berkey became indebted to the plaintiff in the sum of $1,807.94, that $1,029.65 had been paid and that there was still due $778.29 with interest after September 1, 1898, for the recovery of which judgment was prayed. *Page 415 
Exhibit "A" to said petition is as follows:
"Timken Carriage Co., 2nd and Branch Streets, St. Louis, Mo.
Ship via Frisco, Santa Fe to __________ at once or as soon thereafter as practicable, the following goods as described in your catalogue, on the following terms: Cash, less five per cent. in thiry days, or note or acceptance, payable four months from May 15, in funds par at St. Louis or New York, without any expense to factory for carrying, exchange or collection. No cancellations, agreements, conditions or stipulations, verbal or otherwise, save those mentioned in this contract, will be recognized.
"The title to goods delivered under this contract to remain in the names of the sellers until they shall have received the money for the same, and upon failure to make such payment, the sellers shall repossess themselves, and take away such goods. Should time be taken under terms of settlement of this or other contracts with us by the buyer, and he should become insolvent, or default payment, sellers shall have the right to declare the whole amount of this or other sales, including all papers given, to be due and collectible. Payment or settlement to be made direct and not through salesmen. (Here follows list of goods and prices.) Goods F. O. B. St. Louis, Mo. Shipped at consignee's risk.
"A. A. HUMPHREY.
"Accepted, subject to approval of Timken Carriage Co., F. A. Slusser, Salesman."
Exhibit "B" to said petition is as follows:
"Timken Carriage Co., Wholesale Carriage Manufacturers. Henry Timken, Prest., H. H. Timken, Sec Treas. Our specialty Timken New Side Spring Vehicles. 2nd and Branch Sts., St. Louis, Mo.
"Timken Carriage Co., St. Louis, Mo., Mar. 24, 98.
"Dear Sirs: I herewith hold myself responsible for order *Page 416 
given you by A. A. Humphrey, Guthrie, O. T., Mar. 22nd.
"Yours truly, BEN F. BERKEY.
"Ship goods to A. A. Humphrey."
On the 20th of June, 1899, the defendant, Humphrey, filed his separate answer to plaintiff's petition in two paragraphs. The first was a general denial. The second alleged that his co-defendant, Berkey, for five years or more had been engaged in the business of selling buggies and agricultural implements at Guthrie, O. T., receiving on different occasions merchandise from the plaintiff, which he sold at retail. That he, Humphrey, was engaged wholly in the real estate and insurance business in said city. That on the 22nd day of March, 1898, F. A. Slusser, agent and salesman of plaintiff, called on him at Guthrie, and represented to him that the plaintiff desired to ship goods to Mr. Berkey, who was considerably in debt; that the plaintiff did not propose to sell any goods to Mr. Berkey, or part with title to goods that should be shipped to him, Berkey; that plaintiff was willing to trust Berkey to handle and dispose of goods, but did not like to ship goods direct to Berkey, for fear of getting involved in litigation with some of Berkey's creditors in regard to the title of the goods.
Said agent then proposed to Humphrey that if he would sign an order for such goods, the plaintiff would ship goods to Guthrie in the name of Humphrey, and upon arrival he should turn them over to Berkey as goods of the plaintiff, and plaintiff would arrange with Berkey for the sale and payment of the same, that if Humphrey would sign such order he would not be considered or held liable to the plaintiff thereon, and called plaintiff's attention to the fact that the *Page 417 
order retained title in the goods until the same were paid for. That upon such representation said Humphrey was induced to sign said order.
That after he, Humphrey, had signed said order, plaintiff without his knowledge made arrangements with Berkey for the sale of the goods, and prepared and sent to Berkey a statement to be signed, acknowledging Berkey's personal responsibility and liability for said goods, which statement was signed by Berkey and forwarded to plaintiff.
That defendant, Humphrey, after signing said order, had no farther dealings with plaintiff, and never saw said goods, and never received the same from plaintiff. That plaintiff shipped the goods to Guthrie in the name of Humphrey, but sent the bill of lading to Berkey, who without the knowledge of Humphrey, received and disposed of the same, and made payments therefor to plaintiff. That he, Humphrey, never received any benefit, advantage or consideration for signing said order, and had no knowledge of the shipment of said goods to Guthrie until long after they had been shipped and turned over to Berkey as aforesaid.
The second count of said answer was demurred to by plaintiff, and demurrer was sustained. Afterward, on the 12th of November, 1899, with leave of court, defendant, Humphrey, filed his additional answer, setting forth in general the same facts stated in the first, and averred that he signed the written order for the specific purpose of enabling the plaintiff to sell and deliver the goods to Berkey; that the order was executed, not as a contract, but for the purpose aforesaid; that Berkey at the time was engaged in the implement *Page 418 
business, and had become financially involved; that plaintiff, through its agent and traveling salesman, represented to him, Humphrey, that while it was willing to trust Berkey to the disposition of the goods on commission, it feared that it might become involved with creditors of Berkey in regard to the title of its goods, and it was thereupon understood and agreed between said plaintiff, acting through its authorized agent and salesman, and defendant Humphrey, that said order should be signed by him, Humphrey for the specific purpose of enabling plaintiff to deliver and sell said goods to said Berkey, and it was expressly agreed between said parties that said written order was not to have and had no effect as a contract between the parties, but merely as a writing for the specific purpose aforesaid.
Said defendant Humphrey further answering, alleged that said written order was executed without consideration therefore, that none of the goods described were ever delivered to him by plaintiff or any other person, that he never received benefit, advantage or consideration for said order, and that the consideration purporting to be expressed had totally and wholly failed. Afterwards, on the 15th day of November, 1900, the plaintiff filed its general denial to defendant Humphrey's answer.
Said cause was then tried to a jury, and one A. J. Corkins was first called as a witness on behalf of plaintiff, who testified that he was the agent of the Atchison, Topeka Santa Fe railroad at Guthrie; that such goods were received there, and on April 25 delivered and receipted for upon payment of freight, the receipt signed A. A. Humphrey; that he thought the hand-writing thereto was that of Mr. Humphrey; *Page 419 
that he knew Mr. Berkey's signature, that the cashier at the depot handled this transaction; that he did not see the receipt signed and knew nothing about it personally; that the only knowledge he had was what he gained from the papers; that he thought the receipt was signed by A. A. Humphrey, judging from the handwriting.
Mr. Timken, of the carriage company, testified by deposition as follows:
"About the 24th of March, 1898 we received through our Mr. Slusser an order for a car load of vehicles. Said order was dated March 22, 1898, and was signed by A. A. Humphrey. Upon receiving the order I noticed that Berkey had not signed it, and inasmuch as our previous transactions had been with those parties jointly, we desired them to be jointly liable in this order also. Therefore, on March 24, I wrote the defendant Berkey a letter, a copy of which letter is hereto attached and marked 'Exhibit E.' In reply to that letter, on April 1st, we received from defendant his obligation to be jointly liable with Mr. Humphrey, which paper is hereto attached and marked 'Exhibit F.' (This is the same as exhibit 'B' to the petition.)
"The order in question was duly filed by us April 18, 1898."
The evidence of Mr. Timken then showed the amount of payments which were made by Mr. Berkey, and the balance due. His testimony closes with the following:
"Question. Please state who ostensibly conducted the business at Guthrie. Answer. Mr. Berkey.
"Ques. How then, did Mr. Humphrey come to be interested in the transaction so far as you are concerned? Ans. We did not regard Mr. Berkey as a responsible person to whom *Page 420 
to extend credit, because we had investigated his financial condition, through the mercantile agencies, and had found that they did not give him any responsible rating. For these reasons we wanted some responsible person to become responsible for the bill. We investigated and found that Mr. Humphrey was responsible, and that we would be safe in giving him credit. This investigation was made at the beginning of our dealings with these defendants.
"Ques. On whose credit did you make the shipment? Ans. On the credit of Mr. A. A. Humphrey. We would not have shipped to Mr. Berkey on his sole credit."
It was then shown on behalf of the plaintiff by testimony of Mr. B. F. Berkey, that all of the goods had been disposed of to the general public before suit brought.
After presentation of a demurrer to the evidence by the defendant Humphrey, which was overruled by the court, Mr. B. F. Berkey was called as a witness for the defense, who, after the introductory testimony in which he stated he knew Mr. Timken in March 1898, was asked:
"Question. State whether or not at that time or any time in the month of March, 1898, you purchased a bill of goods from the plaintiff through their agent Slusser? (Objected to as incompetent, irrelevant and immaterial, and not the best evidence.)
"By the court: 'Is that in reference to the goods in controversy?'
"By Mr. Huston: 'Yes sir.'" (Which objection was by the court sustained, to which the defendant excepts.)
Mr. Berkey then testified that he knew Mr. Slusser, that he knew when the order for goods was made out; that he *Page 421 
saw it made out; that it was at his house; that Slusser and he were present; that he dictated the order, and he (Slusser) wrote it.
"Question. Did you have any conversation with Mr. Slusser at that time about the matter of giving the order for goods? (Objected to. Objection sustained.)
"Ques. Please state what, if anything you stated, to Mr. Slusser at that time concerning the matter of giving him an order? (Objected to. Objection sustained.)
"Ques. State whether you saw the instrument signed by Mr. Humphrey. Ans. Yes sir.
"Ques. Please state what, if anything was said by plaintiff's agent to induce Mr. Humphrey to sign it? (Objected to. Objection sustained.)
"Ques. State what was said, if anything, between Slusser and Mr. Humphrey, as to any conditions upon which the order was signed, or for what purpose, if any, the order was to be used, at or before Mr. Humphrey signed the same?" (Objected to. Objection sustained.)
Mr. Berkey then testified that he received the goods described in the order; that he received the bill of lading for these goods; that he received it by letter from the Timken Co. in St. Louis, direct to him.
That he took the bill of lading, and when the goods came went to the depot for them, showed the agent the bill of lading as his authority for receiving them, and receipted for them, signing Mr. Humphrey's name to the receipt and received them after paying freight on the same, and had the drayman take them to his place of business. *Page 422 
"Question. State whether or not Mr. Humphrey ever received those goods or any portion of them, if you know?" (Objected to. Objection sustained.)
Mr. Berkey then testified that he sold the goods to his customers, that he never gave any of them to Mr. Humphrey. That he collected the proceeds of sale, and never gave any of proceeds to Mr. Humphrey. That he paid plaintiffs what was paid for them. Mr. Berkey then testified further that after he and Slusser had made out the order for the goods, he, Slusser, went out to get Mr. Packer, and returned to Berkey's house with Mr. Humphrey. Mr. Berkey was then again asked for the conversation between Humphrey and Slusser, and whether anything was said between them as to whether or not the order was to be a contract for the purchase of the goods by him, and also for what use the order, when signed was to be put to. All of which was by the court rejected.
On cross examination, Mr. Berkey repeated that he got the goods, and stated that he did not know how soon Mr. Humphrey found out that he got them, but that he probably knew within thirty or sixty days.
On re-direct examination, Mr. Berkey testified that the written obligations (exhibit "B" to petition) by which he agreed to become responsible for the shipment was made out in St. Louis by the Timken Co., and sent to him; that he signed it and sent it back adding, in his own hand writing the postscript which reads, "Ship goods to A. A. Humphrey."
The defendants then offered W. D. Packer, as a witness to prove the object of securing a signature other than Berkey *Page 423 
to the order and made the following tender of testimony by said Packer:
"Counsel for the defendants on behalf of the defendant Humphrey, now offers to prove by this witness that shortly after the order sued on in this case was made out, and before the same was signed by the defendant, Humphrey, that the plaintiff's agent and salesman went to this witness at the business house and office of the defendant, Berkey, in the city of Guthrie, and stated to him that he had completed taking an order for goods from Mr. Berkey, but that Mr. Berkey had said that he couldn't give the order himself, for fear that his other creditors, the Keystone people, might jump onto their goods and attach them, and if the order was made out in his name, that he, Slusser, had proposed to Berkey to have Billy, meaning Mr. William Packer, this witness, sign the order; and we offer further to prove that Slusser, the agent and traveling salesman of the plaintiff, then requested this witness to sign this order, and at the same time stating to him that he wasn't to be held liable for it, that it would be no contract at all as between the plaintiff in this case and the witness, but that it would be used only for the specific purpose of enabling them to sell these goods to Mr. Berkey."
Offer objected to and by the court excluded.
Mr. Packer testified that he was clerk for Mr. Berkey; that the bill of lading for the goods in question came, through the regular course of mails from the Timken Carriage Co., of St. Louis, to Mr. Berkey.
The plaintiff in error was then offered as a witness in his own behalf, and admitted signing the order for purchase of the goods and tendered his testimony as to the terms and conditions upon which he signed it, which tender was as follows: *Page 424 
"Here counsel for the defendants, in behalf of the defendant, Humphrey, offered to prove by the witness, Humphrey, that on the day that this order was given, and before it was given, the plaintiff, by their agent, Slusser, came to his real estate and insurance office in the city of Guthrie, and informed him that he had sold a car load of goods to the defendant B. F. Berkey and that an order had been made out, but that Mr. Berkey had told him that he wasn't in shape to give the order in his own name for the reason that he was somewhat involved with the Keystone people, other creditors of Berkey's, and feared that the Keystone people might jump onto the goods of this plaintiff if they were sent to him in his own name, and that Mr. Slusser had suggested to Mr. Berkey that the matter might be remedied by having Billy Packer sign the order, and have the goods sent here to Guthrie in Billy Packer's name; that he had seen Billy Packer and Billy did not want to do it, as he stayed right there with Berkey, and didn't want to mix in it in that way, and that he, Slusser, then went to Humphrey and proceeded to explain the matter to Mr. Humphrey, this witness, and stated that if he would sign that order, that he wouldn't be held liable for it at all, and that it should not be a contract at all so far as he was concerned, and that the only purpose of it was to enable the plaintiff in this case, the Timken Carriage Co., to sell this order of goods to Mr. B. F. Berkey; that upon such explanation this witness and defendant accompanied Mr. Slusser up to Berkey's residence, where Berkey was then ill, and the matter was further talked over there with the same effect, and that upon that agreement, that if he, Humphrey, would sign the order, that he should not be held liable, that it would be used only for the specific purpose of enabling the Timken Carriage Co., to sell and ship these goods to Berkey in order to protect them and Berkey from having those goods attached by other creditors of Berkey, thereupon the defendant, Humphrey, relying upon those statements, signed said contract if the same was to be used for the specific purpose of *Page 425 
enabling the Timken Carriage Co. to sell the goods to B. F. Berkey, and for no other purpose."
Upon objection offered this tender of testimony was rejected by the court, and exceptions taken.
Mr. Humphrey then testified that he never received the goods, and was never notified of their shipment; that he did not know for two weeks after Berkey got the goods that he, Berkey, had received them; that he did not authorize Berkey to get them from the depot; that the freight receipt was not his, and that signature thereto was not his signature; that he did not write his name to it, or authorize any other person to write it. That he did not receive the goods or authorize anybody to receive them on his behalf. The court sustained objections to the following questions:
"Question. State whether you received proceeds from the sale of any of these goods at any time?
"Ques. State whether or not you ever received any benefit, advantage or consideration of any kind or character for or upon that order?"
On cross examination Mr. Humphrey testified that there was no understanding, at the time the order was signed that Berkey was to receive the goods, further than the understanding he had with Slusser that he was to sign the order for the goods for the purpose of helping Slusser, as agent of the Timken Carriage Co., to sell a car load of buggies to Berkey, and on that occasion there was no understanding that Berkey was to go and get the goods when they arrived. That there was nothing said between him and Slusser in regard to receiving the goods, that he knew he was not to receive them *Page 426 
because Mr. Slusser told him they would ship the goods direct to Berkey in his, Humphrey's name.
The cross examination developed the fact that Humphrey expected Berkey to receive the goods, because he, Humphrey, had not purchased them, but had taken steps intended to facilitate a purchase by Berkey.
Upon re-direct examination there was another attempt to show that whatever expectation Mr. Humphrey had of Berkey's receiving the goods was based upon the fact that he, Humphrey, had not agreed to the purchase of them, but that Berkey and the company had agreed upon terms between themselves.
This was held by the court incompetent as it sought to contradict the writing.
The jury was then instructed by the court as follows.
"By the Court: 'Gentlemen of the jury, you have heard the evidence in this case, and in the judgment of the court there is no controverted issue of fact to be determined by the jury. It is the view of the court that on the uncontroverted facts and under the issues in this case, and under the law, that the plaintiff is entitled to recover the amount due for the shipment of buggies under the contract or order that has been introduced in evidence, and the court directs the jury to return a verdict for the plaintiff for that sum, which I will indicate to you as soon as it is figured up.'" (To which instruction of the court, the defendant, Humphrey, excepts.)
This was the only instruction given by the court.
The jury returned a verdict for plaintiff in the sum of $893, upon which judgment was rendered in favor of plaintiff and against defendant, Humphrey, in said sum. On *Page 427 
the next day motion for new trial was filed, on the grounds that verdict and judgment were contrary to law, and not sustained by sufficient evidence, and other grounds specifying error in admitting and rejecting testimony, and in peremptorily instructing the jury to return a verdict for plaintiff and against Mr. Humphrey for $893, or for any sum.
Motion for a new trial was overruled, and exceptions taken; case was then brought to this court.
Exhibit "E" referred to in testimony of Mr. Timken, is as follows:
"ST. LOUIS, Mo., Mar. 24, '98.
"B. F. Berkey, Esq., Guthrie, Okla.
"Dear Sir: We are in receipt of your order given Mr. Slusser, and signed by Mr. Humphrey. Mr. Slusser writes that you prefer it this way, and it is agreeable to us, providing you simply write us a letter that you are responsible for the account with Mr. Humphrey. We will make shipment to Mr. H. and also bill it to him.
"Mr. Slusser advises that if we can get in more work to put in Klondykes, crating all leather quarter tops low. On account of the arched axle work, will not be able to ship this car as promptly as otherwise. We, like all other carriage houses, have all and more than we can do, and we are liable to disappoint you a little on time on this order. Business has never been as good as at present, that is as far as the volume is concerned, and for that reason each buyer wants his goods promptly, which means that a factory must have a little more time in the rush of the season on the individual orders.
"We will promise to do our best for you, and feel sure that you will find this car of work an improvement over the two previous cars. *Page 428 
"Thanking you for the same, and trusting to hear from you promptly, beg to remain,
"Yours truly,
"TIMKEN CARRIAGE CO."
September 26, Timken Carriage Co. wrote A. A. Humphrey as follows:
"ST. LOUIS, MO., Sept. 26 '98.
"A. A. Humphrey, Esq., Guthrie Okla.
"Dear Sir: We have drawn on you at one day's sight for $1,807.94 to pay for car of buggies shipped Apr. 18th, and which was sold on terms of 4 months net from May 1st; therefore as the account was due Sept. 15th we trust you will honor draft on presentation. At one day's sight, it will give you three of grace, and in this trust it will not inconvenience you to pay it at the end of the fourth day.
"Yours truly,
"TIMKEN CARRIAGE CO."
The above letter was answered as follows:
"GUTHRIE, OKLA., Sept. 28th, 1898.
"Timken Carriage Co., St. Louis, Mo.
"Dear Sir: I am in receipt of yours of Sept. 26th, notifying me that you have drawn on me for buggies shipped April 15th. Of course you are aware how this matter is, and it will be a great convenience to me if you will call that draft back and wait thirty or sixty days for this money. The larger part of those buggies were sold on time and the notes are becoming due from the 1st of October up.
"Hoping that you may see fit to extend this matter for thirty or sixty days, then the matter will be attended to promptly, I remain,
"Yours truly,
"A. A. HUMPHREY." *Page 429 
Which letter was replied to by Timken Carriage Co. as follows:
"ST. LOUIS, Mo., Sept. 30 '98.
"A. A. Humphrey, Esq., Guthrie, Okla.
"Dear Sir: We are in receipt of yours of the 28th; also received letter from Mr. Berkey, and kindly refer you to our letter to him. In that letter we propose that he pay one-half now and the balance December 1st. We have explained our reasons why we cannot see our way clear to grant an extension on the whole of the account.
"Yours truly,
"TIMKEN CARRIAGE CO."
Opinion of the court by
This case was tried and determined upon the theory that the transaction resulting in the shipment of the goods was a transaction resting upon a written agreement, and could not therefore be varied by parol evidence. The determination of this question determines all necessary questions presented by the record.
The order for the goods was not a contract binding upon the parties until accepted by the Timken Carriage Co. It was a proposal only, which required acceptance, according to its terms and tenor, before it assumed the dignity of a written obligation. There is no contract, in fact, until the minds of the contracting parties have met and consented to the terms proposed. The agreement must be mutual, and communicated each to the other; and consent is not mutual unless the parties all agree upon the same thing in the same sense. *Page 430 
The Timken Carriage Co. say in their petition that the order for the goods was duly accepted, "and that thereafter said contract or sale of said articles became complete, and that in compliance therewith the plaintiff delivered to Humphrey the goods mentioned in said order according to the terms thereof."
How this acceptance was communicated to Mr. Humphrey was not shown — whether by letter or verbal notice is left to conjecture — but the petition does say the goods were delivered to Humphrey, according to the terms of the order.
The defendant answered first by a general denial, and such answer put in issue the question of acceptance as pleaded, and the question of the delivery of the goods.
The evidence upon the trial did not show either written or verbal acceptance of the order by the Timken Carriage Co., which was communicated to Mr. Humphrey, but does show that the Timken Carriage Co. did not accept it until one B. F. Berkey had been written to and requested to become responsible for the order, and when notified by Mr. Berkey that he would become so responsible, the goods were shipped by bill of lading addressed to Mr. Humphrey, but mailed to Mr. Berkey, who took the same and procured the goods from the A. T. S. F. R. R. at Guthrie, placed them in his own place of business and sold them to his customers.
Mr. Timken, of the Timken Carriage Co. testified that the goods were billed to Mr. Humphrey April 18, 1898, but this declaration probably refers to the language of the bill of lading, for the evidence is conclusive that it was mailed to B. F. Berkey. *Page 431 
The pleadings and the evidence show a disputed question of fact, which raises the question as to whether or not a consummated contract was ever entered into by and upon which defendant A. A. Humphrey became liable to the Timken Carriage company.
Mr. Humphrey did not receive benefit from the transaction; his liability, if any is found, rests upon the contract sued on, the validity of which is in contest.
The jury was instructed that there was no controverted question of fact in the case, and that the plaintiff was entitled to recover.
This, we think was material error, which necessitates a reversal of the judgment.
In the trial of the case, the defendant offered evidence to show that the order for the goods, which is made the basis of plaintiff's action, was given at the solicitation of the plaintiff's agent, Slusser, who represented that he had sold a car load of goods to B. F. Berkey, but that Berkey was involved financially and it was feared that a shipment to Berkey would involve the Timken Carriage Co. with other creditors; that if he, Humphrey, would sign the order for the goods, he would not be held liable for them; that it would be used only for the specific purpose of enabling the Timken Carriage Co. to sell and ship goods to Berkey without danger of having them attached by other creditors, and that the order was signed for this and for no other purpose.
This tender of testimony and all evidence of like purport, was by the court rejected, because in conflict with the contract. *Page 432 
Admitting that the order so signed was a contract in writing, was it not competent to prove that it was not intended as such, and was in fact executed and delivered for an entirely different and specific purpose?
Under the law, as generally accepted and enforced in this country, parol evidence is not competent to change or vary a written agreement; but when does a writing become an agreement? Certainly not until it is assented to in the sense that its tenor purports. As between the parties, a written instrument which is understood to have a particular import and meaning cannot by one of the parties thereto, without the knowledge or consent of the other, be so diverted from the purpose of its execution as to fix other and new liabilities not contemplated when made. Such a construction of the law wholly destroys the definition which time-honored customs and rules have given to contracts, to-wit, that two minds must meet and consent.
The courts in the enforcement of contracts, have looked to the intent of the parties in the execution and delivery of them, and in many instances where the plain letter of the contract fixes a liability contended for by one of the parties, have admitted parol proof to show that in the execution and acceptance of it something else was intended. (Hurlburt v.Dusenbery et al. 57 P. 860; Brick v. Brick, 98 U.S. 517; Warev. Allen, 128 U.S. 590; Burk v. Dulaney, 153 U.S. 228; Bradleyv. Washington, Alexandria and Georgetown Steam Packet Co., 13 Peters, 89; U.S. Fidelity Guaranty Co. v. Siegmann, Supreme Court Minn. Aug. 1, 1902.)
In Hurlburt v. Dusenbery et al. 57 P. 860, the court, *Page 433 
quoting from the opinion of Mr. Justice Miller in Orierson v.Mason, 60 N.Y. 394, said:
"The object of the testimony was to show that the instrument was executed for a specific purpose, and, that purpose being accomplished, was of no effect in changing the contract previously made with the defendant. I think that it was competent evidence for this purpose. The defendant made out a contract. The plaintiff proved an instrument which altered the contract, and the defendant had a right to prove that the instrument introduced was not intended as an alteration of the contract but with a view of accomplishing a particular purpose. Such evidence was not given to change the written contract by parol, but to establish that such contract had no force, efficacy, or effect; that it was not intended to be a contract, but merely a writing to be used in inducing Woods to make advancements upon the goods. This is in avoidance of the instrument, and not to change it; and I do not see why the testimony was not as competent in this case as it would be to show that a written instrument was obtained fraudulently, by duress, or in any improper manner. Such evidence does not come within the ordinary rule of introducing parol evidence to contradict written testimony, but tends to explain the circumstances under which such instrument was executed and delivered."
The court also quotes approvingly from the language of Earl, J., in Pym v. Campbell, 6 El Bl. 370, as follows:
"The production of a paper purporting to be an agreement by a party, with his signature attached, affords a strong presumption that it is his written agreement; and if, in fact, he did sign the paper, animo contrahendi, the terms contained in it are conclusive, and cannot be varied by parol evidence. * * * But if it be proved that in fact the paper was signed with the express intention that it should not be *Page 434 
an agreement, the other party cannot fix it as an agreement upon those so signing it."
From these authorities it would seem clear that Humphrey had a right to show that the order was not given as a purchase, or proposal for a purchase, but for the purpose stated. It is true that it was given to an agent and contained a provision that it was subject to the approval of Timken Carriage Co., but such agent in an agreement as to what the order was for, spoke for the Timken Carriage Co. and what he did agree to was binding upon his principal; to admit otherwise would be to sanction a fraud in the interest of the principal, because the principal perpetrated it through an agent.
But we think the conclusions here reached need not rest alone upon the declaration of Mr. Humphrey as to what was understood and agreed to as between Mr. Humphrey and Slusser, agent for the Timken Carriage Co., for we think that the evidence introduced by the plaintiff, sufficient to justify a submission of it to the jury, for the purpose of determining the question as to whether or not the Timken Carriage Co. at the time accepted the order as Humphrey's contract or proposal to purchase. The order was given March 22nd and received by them in St. Louis, March 24th, and on that day they wrote Mr. B. F. Berkey concerning the order as follows:
"ST. LOUIS, MO., Mar. 24 '98.
"B. F. Berkey, Esq., Guthrie, Okla.
"Dear Sir: We are in receipt of your order given Mr. Slusser and signed by Mr. Humphrey. Mr. Slusser writes that you prefer it this way and it is agreeable to us, providing that you simply write us a letter that you are responsible *Page 435 
for the account with Mr. Humphrey. We will make shipment to Mr. H. and also bill it to him.
"Mr. Slusser advises that if we can get in more work to put in Klondykes, crating all leather quarter tops low. On account of the arched axle work, will not be able to ship this car as promptly as otherwise. We, like all other carriage houses, have all and more than we can do, and we are liable to disappoint you a little on time on this order. Business was never as good as at present, that is as far as volume is concerned, and for that reason each buyer wants his goods promptly, which means that a factory must have a little more time in the rush of the season on the individual orders.
"We will promise to do our best for you and feel sure that you will find this car of work an improvement over the two previous cars.
"Thanking you for same and trusting to hear from you promptly, beg to remain,
"Yours truly,
"TIMKEN CARRIAGE CO."
In the light of this case, this language admits of the construction contended for by the defendant, that the order given Slusser was the order of Berkey and so understood by Timken Carriage Co. That it was not received as the order of Humphrey at the time, but was received under the terms and conditions set up in defendant's answer; proof in support of which was tendered and rejected by the court.
For the reasons herein stated the judgment of the district court is reversed, and the cause is hereby remanded to the district court of Logan county, with instructions to vacate the *Page 436 
judgment rendered therein, and grant a new trial upon the motion therefor.
Burford, C. J., who presided in the court below, not sitting; Burwell, J., dissenting; all the other Justices concurring.