**J.E. DEVINE, Plaintiff-Appellant,**

v.

**LADD PETROLEUM CORPORATION, Defendant-Appellee.**

No. 82–2040.

United States Court of Appeals, Tenth Circuit.

Sept. 7, 1984.

Douglas McKeever of McKeever, Glasser, Conrad, Herlihy and McKeever, Enid, Okl., for plaintiff-appellant.

James A. Kirk and James Wm. Murray, III of Kirk & Chaney, Oklahoma City, Okl., for defendant-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the

determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal by the plaintiff, J.E. Devine, from a judgment entered by the district court after a bench trial (1) denying his petition for cancellation of an oil and gas lease held by the defendant-appellee, Ladd Petroleum Corporation, and (2) denying his claim for damages because of drainage from off-set wells. Devine based his petition on the allegations that Ladd breached the implied covenants of further development and protection against drainage as to a particular tract of the oil and gas lease. Because Devine and Ladd are of diverse citizenship, jurisdiction is proper under 28 U.S.C. § 1332.

### Background

At all times pertinent to this action, Devine was the owner of the surface and minerals in and under the southwest quarter of a section of land (section 13, T20N, R3W, I.M.) in Garfield County, Oklahoma. Devine's predecessors in title, Henry and Pauline Beichter, executed and delivered to one A.O. Olsen an oil and gas lease on February 28, 1962, for the above-described land. Devine subsequently acquired the mineral interest in the land subject to the above-described lease. At all times pertinent to this action, Ladd owned by assignment the leasehold interest in the mineral estate of the land in question. The lease is held by production in paying quantities and always has been since the end of its primary term on or about November 9, 1967.

In 1964, the Oklahoma Corporation Commission ordered that section thirteen be subject to an eighty-acre spacing unit. Since that time, two wells have been completed on the lease at the following locations:

(1) The Beichter A–1 well was completed in the E/2 SW/4 of Section 13, T20N, R3W in January, 1965, and produced in paying quantities until the first half of 1979. This is the only tract

which is in controversy in the instant action.

(2) The Beichter A–2 well was completed in the W/2 SW/4 of Section 13, T20N, R3W in December, 1976, and is currently producing in paying quantities.

The dispute between Devine and Ladd over the lease began in March, 1976, at which time various exchanges of correspondence were conducted through May, 1981. In March, 1976, there was one producing well (Beichter A–1) located in the northeast quarter of the southwest quarter of section thirteen. On March 30, 1976, Devine sent Ladd a letter demanding that Ladd further develop his land in section thirteen as well as another quarter section in section twenty-four, which is also under lease to Ladd. (Section twenty-four is not in dispute in the instant case.) After extensive correspondence, Devine and Ladd ultimately reached an apparent resolution to their dispute. On August 27, 1976, Ladd's assistant land manager wrote a letter to Devine's attorney expressing Ladd's understanding of the settlement between the parties. On September 2, 1976, Devine's attorney responded to the August 27 settlement letter through a letter of acceptance. The trial court found that these two letters formed a binding agreement (hereinafter referred to as 1976 settlement agreement) delineating any further obligations by Ladd regarding the drilling of oil and gas wells in the southwest quarter of section thirteen. *J.E. Devine v. Ladd Petroleum Corp.*, No. 81–1158–R, at 3–4 (W.D.Okla. July 30, 1982).

In December, 1976, pursuant to the terms of the 1976 settlement agreement, Ladd completed a producing well (Beichter A–2) in the Mississippi formation under the west half of the southwest quarter of section thirteen. Ladd also completed a producing well in section twenty-four as required by the agreement. There is no dispute in the instant action whether Ladd fulfilled the terms of the 1976 settlement agreement; the dispute is over the reach of the agreement only.

In the first half of 1979, the Beichter A–1 well, located in and under the east half of

the southwest quarter of section thirteen, stopped producing oil and gas and began producing water. Devine subsequently sent Ladd a letter on August 6, 1979, demanding specifically that Ladd further develop the *east half* of the property, or release the oil and gas lease. After extensive correspondence between the parties failed to resolve this second dispute, Devine filed the instant action in Oklahoma state district court; Ladd's petition for removal was subsequently granted and the case was removed to federal district court. In this case, Devine requests relief only on the *east half* of the lease in question.

After reviewing all the correspondence between the parties and hearing oral testimony, the trial court found that (1) the letters of August 27, 1976, and September 2, 1976, constituted a settlement of the dispute in question, (2) Ladd had fulfilled its obligation expressed in the settlement agreement regarding the drilling of any additional wells, (3) at the time he entered into the agreement, Devine was fully aware of any drainage or potential drainage which may have been occurring, (4) a reading of all the correspondence indicated that the parties intended to "finally resolve all issues" regarding "additional wells" to be drilled on the southwest quarter of section thirteen, (5) although Oklahoma law provides for implied covenants to diligently develop a leasehold and to protect against drainage, an express covenant will control over any implied covenants, and (6) the 1976 settlement constituted an express agreement which relieved Ladd of any obligation under the implied covenants to diligently develop or to prevent drainage from the southwest quarter of section thirteen. Hence, the trial court found essentially that in entering into the 1976 settlement agreement with Ladd, Devine waived any future claim he might have against Ladd regarding the *entire* southwest quarter un-der the implied covenants to develop and to protect the lease from drainage.

On appeal, we are presented with two primary issues: (1) whether the trial court erred in finding that the 1976 settlement agreement constituted an express covenant relieving Ladd of the obligation to drill any additional wells on the entire southwest quarter of section thirteen; (2) if not, whether the trial court erred in its application of Oklahoma law in finding that Devine and Ladd had entered into an express covenant which vitiated the implied covenants of further development and protection against drainage. Because of the manner in which the trial court disposed of this cause, we are not presented with the factual questions of this cause, we are not presented with the factual questions concerning the existence of drainage and adequate development; we need only determine whether the court properly found that Devine waived the present claim through the 1976 settlement agreement. Based on the reasons set forth below, we hold that the trial court erred in finding that the 1976 settlement agreement was dispositive of the present dispute.

### The Settlement Agreement

Although Devine acknowledges that a settlement agreement was in fact executed between the parties through the letters of August 27, 1976, and September 2, 1976, he maintains that the trial court erred in its interpretation of the *substance* of the agreement. We accept as fact, therefore, that the above-mentioned letters comprised the only binding agreement between the parties.[1] We are thus confronted with the question of the intention of the parties at the time they entered into the agreement. As noted previously, the trial court found that based on "all the correspondence" be-

---

1. The trial court apparently reviewed all the correspondence between the parties in concluding that their intent in entering the 1976 settlement agreement was to express a final, binding resolution of all disputes (past and future) between them concerning the drilling of oil and gas wells in and under the entire southwest quarter of section thirteen. *See J.E. Devine v. Ladd Petroleum Corp.,* No. 81–1158–R, at 4 (W.D.Okla. July 30, 1982). Ladd acknowledges that the 1976 settlement agreement is the *only* binding agreement between the parties. Brief of Defendant-Appellee, Ladd Petroleum Corporation at 11–12.

tween the parties, Devine and Ladd intended the agreement to "finally resolve all issues in regard to additional wells" to be drilled on the entire southwest quarter of section thirteen. Devine asserts that the trial court erred because the settlement agreement and the outside correspondence clearly indicate that the parties' intent was to resolve the dispute over *past* damages on the *west half* of the quarter section only, and not *future* damages (failure to develop and drainage) over the entire quarter section. Devine points out that the present dispute is over the *east half* of his land only and that there are presently no producing wells in that area. We agree with Devine's basic contention that the 1976 settlement agreement does not foreclose him from bringing the instant cause of action.

In Oklahoma, the interpretation of a contract is governed by a comprehensive statutory scheme. *See* Okla.Stat.Ann. tit. 15, §§ 151–177 (West 1966). Several of those statutory rules of interpretation, as applied by the state appellate courts of Oklahoma, are appropriate in the present case. The mutual intention of the parties at the time of contracting governs the interpretation of a contract. Okla.Stat.Ann. tit. 15, § 152 (West 1966). In determining the intention of the parties, the express language of a contract controls if it is unambiguous on the face and there exists no fraud, accident, or pure absurdity. Okla.Stat.Ann. tit. 15, § 154 (West 1966); *Premier Resources, Ltd. v. Northern Natural Gas Co.*, 616 F.2d 1171, 1180 (10th Cir.1980), *cert. denied*, 449 U.S. 827, 101 S.Ct. 92, 66 L.Ed.2d 31 (1980); *Johnson v. O-Kay Turkeys, Inc.*, 392 P.2d 741, 743 (Okla.1964) (quoting *Greeson v. Greeson*, 208 Okl. 457, 257 P.2d 276, 279 (1953)); *Lindhorst v. Wright*, 616 P.2d 450, 453 (Okla.Ct.App.1980). Hence, when a con-

tract is written, the intention of the parties must be determined from the writing alone, if possible. Okla.Stat.Ann. tit. 15, § 155 (West 1966). In the presence of an ambiguity, however, extrinsic evidence may be admitted to determine the parties' intent at the time they entered into the contract. *HBOP, Ltd. v. Delhi Gas Pipeline Corp.*, 645 P.2d 1042, 1044 (Okla.Ct.App.1982). A court is without authority to admit extrinsic evidence unless the contract terms are ambiguous. *Id.* *Accord Humphreys v. Amerada Hess Corp.*, 487 F.2d 800, 802 (10th Cir.1973). Finally, regardless of the breadth of the terms used in a contract, the obligations established extend only to those contemplated by the parties. Okla.Stat. Ann. tit. 15, § 164 (West 1966).

When reviewing the trial court's application of these rules of interpretation, we are cognizant of that court's broad authority in such matters. Whether a contract is ambiguous is a question of law for the court to decide and if the court determines the language to be clear, the *construction* of the contract is also a matter of law for the court. *Ferrell Constr. Co., Inc. v. Russell Creek Coal Co.*, 645 P.2d 1005, 1007 (Okla.1982). In addition, the *interpretation* of an unambiguous contract is a question of law for the court. *State ex rel. Dep't of Highways v. Martin*, 572 P.2d 611, 613 (Okla.Ct.App.1977). *But see* A.L. Corbin, Corbin on Contracts § 554, at 522 (1952). However, if the writing does not clearly reflect the intention of the parties and extrinsic evidence is therefore required, a question is presented for the trier of fact regarding the interpretation of the contract. *State ex rel. Dep't of Highways v. Martin, supra* at 613.

In the instant case, the trial court was apparently[2] unable to discern the in-

2. We assume that the trial court found the settlement agreement ambiguous, although it did not make such a specific finding. The court clearly found that the settlement agreement completely integrated the final understanding between Devine and Ladd; thus, extrinsic evidence was inadmissible to vary or explain the terms of the contract unless it was found to be

ambiguous. *See* Okla.Stat.Ann. tit. 15, § 137 (West 1983); *HBOP, Ltd. v. Delhi Gas Pipeline Corp.*, 645 P.2d 1042, 1044 (Okla.Ct.App.1982). *See also Bleakley v. Bowlby*, 557 P.2d 894, 896–97 (Okla.1976) (in action to impose constructive trust based on alleged oral contract, court discusses application of parol evidence rule in Oklahoma). We are cognizant that the trial court

tention of the parties solely from the language of the letters of August 27, 1976, and September 2, 1976. *See J.E. Devine v. Ladd Petroleum Corp., supra* at 4. The court therefore viewed all of the correspondence between Devine and Ladd after the dispute first arose in March, 1976, in reaching its decision that the parties intended the agreement to finally resolve all issues regarding the drilling of any additional wells in the southwest quarter of section thirteen. *Id.* After reviewing the 1976 settlement agreement, however, we are convinced that the language unambiguously reflects the intent of the parties; thus, this is not a situation in which extrinsic evidence was required to determine the meaning of the contract.[3] *See, e.g., Continental Oil Co. v. Fisher Oil Co.,* 55 F.2d 14, 16 (10th Cir.1932); *Anthis v. Wheeler,* 136 Okl. 199, 278 P. 1081 (1928). We therefore hold as a matter of law that the trial court erred by admitting extrinsic evidence to determine the intent of the parties at the time they entered the settlement agreement. The language of the agreement reflects the parties' intent and thus controls its interpretation.

The letter of August 27, 1976, to A. Camp Bonds, attorney for Devine, from John Reid, Jr., Assistant Land Manager for Ladd, reads as follows:

A. Camp Bonds, Esq.
Bonds, Matthews & Bonds
P.O. Box 1906
Muskogee, Oklahoma 74401

Re:  J.E. Devine Lease—Garfield County

SW/4 Section 13 and NW/4 Section 24,

Township 20 North, Range 3 West

Dear Mr. Bonds:

Pursuant to our telephone conversation this week, this letter sets out Ladd's understanding of the settlement between Ladd Petroleum and Mr. J.E. Devine regarding Mr. Devine's request for additional development on the oil and gas leases covering the SE/4 of Section 13 and the NW/4 of Section 24–20N–3N, Garfield County, Oklahoma.

Ladd agrees on or before September 15, 1976 that it will commence the drilling of a 6,000' *Mississippi test* to be located in the *SW/4 SW/4 of Section 13.* To evidence Ladd's intent to drill this well, I am enclosing a copy of the drilling contract. Should Ladd fail to commence this well, it agrees that *it will release the oil and gas leases in question insofar as said leases cover the W/2 SW/4 of Section 13* and the E/2 NW/4 of Section 24.

Ladd further agrees on or before December 1, 1976 to commence the drilling of a Mississippi test to be located in the E/2 NW/4 of Section 24. If Ladd fails to timely commence such test, it agrees to release the oil and gas lease covering the E/2 NW/4 of Section 24.

Ladd further agrees that it will grant to Mr. Devine the right to meet any offer made by a bona fide purchaser for the sale of the oil and gas leases covering the above described quarter sections at any point in time that Ladd receives such an offer that is acceptable to it. Mr. Devine shall have thirty (30) days after receiving notice of such pending sale in which to advise if he wishes to acquire the leases for the offered terms.

It is Ladd's further understanding that Mr. Devine shall not cause legal action for development to be brought against Ladd so long as *the terms of this letter* are complied with by Ladd.

---

may have properly viewed extrinsic evidence to determine if, in fact, the parties intended the 1976 settlement agreement to be a complete integration of their final understanding regarding that dispute. This does not change the fact, however, that the court considered evidence outside of the agreement to determine the parties' intent at the time it was drafted regarding its substance.

**3.** Even were we to rely on the prior written negotiations between the parties to determine their intent in entering into the 1976 settlement agreement, those documents sustain our ultimate determination of intent.

If the terms set forth herein are contrary to our discussions and agreement, please advise immediately.

Very truly yours,

/s/ John Reid, Jr.

John Reid, Jr.

Assistant Manager—Land

R., Vol. II, Plaintiff's Exhibit 2-H (emphasis added).

The letter of September 2, 1976, to John Reid, Jr., from A. Camp Bonds reads as follows:

Ladd Petroleum Corporation

830 Denver Club Building

Denver, Colorado 80202

Attention: Mr. John Reid, Jr.

Assistant Manager—Land

Re: J.E. Devine Lease—Garfield County

SW/4 Sec. 13 and NW/4 Sec. 24, T20N, R3W

Dear Mr. Reid:

I have your letter of August 27, 1976, with enclosures and have discussed the contents thereof with Mr. J.E. Devine and *it appears that it is in accord with our agreement.*

We are quite anxious to have prompt information as to the results of the well which we hope is now in the process of being drilled and trust you will forward this information to us when it is available.

We do not wish to complicate matters and we're certain it is not your intent, nor is it Mr. Devine's intent, to indicate that this is in settlement of any payment due for location of the wells on the property, or for damages to the surface, or compensation for lots. Mr. Devine advises that on your well location you, without apparent necessity, cut several terraces and he hopes these can be repaired before undue damage in the event of excessive rains. These matters can all be determined at a later date.

Yours very truly,

A. CAMP BONDS

*Id.,* Plaintiff's Exhibit 2-I (emphasis added).

We view the language of the August 27 letter as clearly obligating Ladd to additionally develop the *west half* of the lease by commencing a test well in the Mississippi formation in and under the "SW/4 SW/4 of Section 13." If Ladd had failed to live up to its end of the agreement, the lease would have been released *only* as to the "W/2 SW/4 of Section 13." Ladd now asks us to hold, however, that because it fulfilled its obligation under the agreement, it is relieved of any further drilling responsibilities regarding the entire quarter section. Such a holding would be contrary to the express language of the agreement and the intention of the parties. Further, and most important, we read the fifth paragraph of the August 27 letter as unambiguously foreclosing Devine's right to bring legal action against Ladd regarding development of the lease on the *west half* of the property since such a waiver is conditioned only upon Ladd's compliance with the terms of that letter. We therefore hold that by the unambiguous language of the 1976 settlement agreement, the parties intended to settle their dispute over the west half of the lease only.[4]

In his present cause of action, Devine is contesting Ladd's alleged failure to fulfill its lease obligations only as they apply to the Skinner Sand formation in and under the *east half* of the southwest quarter of section thirteen. At least facially, Devine has a right to raise such a specific claim because of the eighty-acre spacing unit scheme mandated by the Oklahoma Corporation Commission. Because of the subject matter of Devine's present claim and the clear intention of the parties as

---

**4.** In rendering this decision, we express no opinion on the trial court's finding that the 1976 settlement agreement contemplated a waiver of all future claims by Devine based on the implied covenants of further development *and* protection against drainage. Because we hold that the agreement does not foreclose the present action on the east half of the quarter section, we need not decide the import of the term "development" as intended by these parties in this agreement.

expressed in the 1976 settlement agreement, we must hold that the trial court erred in finding that the agreement effectively foreclosed Devine's cause of action. The decision of the trial court regarding its interpretation of the 1976 settlement agreement is reversed and the case is remanded for a decision on Devine's claim for damages based on the alleged failure of Ladd to develop the lease and to protect it from drainage in the east half of the southwest quarter of section thirteen.

REVERSED AND REMANDED.